Levin Liquor License Case.

Argued September 13, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*William N. J. McGinniss,* Special Assistant Attorney General, with him *George G. Lindsay* and *Horace A. Segelbaum,* Assistant Attorneys General, and *David Stahl,* Attorney General, for Pennsylvania Liquor Control Board, appellant.

*Herman Steerman,* with him *Jack Sirott,* and *William T. Steerman,* for appellee.

OPINION BY WRIGHT, J., November 16, 1961:

On September 16, 1960, Leonard Levin filed with the Pennsylvania Liquor Control Board an application for a restaurant liquor license at premises located in the Country Club Shopping Center, Middletown Township, Bucks County. The Board found that Levin was a responsible person of good reputation, but refused the application on the sole ground that "there will be a passage within the building between the said premises and a bowling alley". The Court of Quarter Sessions of Bucks County sustained an appeal by Levin, and directed that the license should be issued. The Board has appealed to this court.

The question before us involves the interpretation of the language of Section 463(a) of the Liquor Code[1] which reads as follows (italics supplied) : "No license for the sale of liquor or malt or brewed beverages in any quantity shall be granted to the proprietors, lessees, keepers or managers of any theater, circus, museum or other place of amusement, nor shall any house be licensed for the sale of liquor or malt or brewed beverages *which has passage or communication to or with*

---

[1] Act of April 12, 1951, P. L. 90, 47 P.S. 1-101 et seq.

*any theater, circus, museum or other place of amusement,* and any license granted contrary to this act shall be null and void".

From the testimony taken in the court below, and stipulation of counsel filed, the hearing judge made a number of findings of fact which are fully supported by the record and are not questioned on this appeal. For a proper understanding of the factual situation, we deem it necessary to set forth certain of these findings as follows:

"1. Penn-Jersey Supply Corporation, a Pennsylvania corporation, is the owner of the Country Club Shopping Center located in the Township of Middletown, County of Bucks, Pennsylvania . . .

"2. On October 6, 1955 Penn-Jersey Supply Corporation leased, in writing, to Jubilee Lanes, Inc., a Pennsylvania corporation, for a period to expire August 31, 1971, a large section of the basement of the Country Club Shopping Center for use as a bowling alley.

"3. Jubilee Lanes, Inc. has sub-divided the basement area leased by it, by means of a solid partition wall, into two areas, one of which is being operated by it as bowling alleys open to the use of the public for a charge. The other section is the restaurant area which is the subject of this application.

"4. On March 1, 1960, Jubilee Lanes, Inc. leased in writing to the applicant, Leonard Levin, the above-mentioned restaurant area for a period of ten years commencing May 1, 1960, rent to begin however thirty days after the approval of the granting of a restaurant liquor license to the said Leonard Levin.

. . .

"11. A common sidewalk extends the entire external length of the shopping center building from which the public has access to the restaurant and bowling alley, and other commercial establishments in the shop-

ping center on both sides of the entrance to the restaurant and bowling alley.

"12. Public access to the restaurant and bowling alleys is by means of a five-foot wide door, consisting of two swinging glass panels, leading from the sidewalk and giving entrance to a two-story foyer, one story of which is on the street floor and the other on the basement floor . . .

"13. With the exception of the entrance door abovementioned on the street floor and the doors hereinafter to be mentioned, leading, respectively, to the restaurant and the bowling alleys on the basement floor, the foyer is entirely enclosed by solid walls.

"14. Immediately inside the doors leading from the sidewalk and extending of equal distance to each side of said doors, is a vestibule, on street level, of a width of 14 (or 15) feet and extending of a depth of 8 feet from the last-mentioned doors. At the extreme depth of this vestibule and on the extreme left side thereof as one enters the vestibule from the sidewalk, is a 6 foot wide stairway descending through an open stairwell to the basement floor and another vestibule of a width of 14 or 15 feet and an irregular depth of approximately 7 feet from the bottom of the stairs to a greater depth to the right hand side thereof.

"15. The wall at the left hand side of the basement vestibule, as one approaches it by descending the stairway, is broken by a door, consisting of two swinging panels, which constitutes the entry to the bowling alleys. Opposite that and 14 or 15 feet distant therefrom and on the other side of the basement vestibule is the doorway entrance to the restaurant proposed to be licensed, consisting also of two swinging doors.

"16. Both the doors to the restaurant and the doors to the bowling alleys may be locked when closed.

"17. The only public entrance to either the bowling alleys or the restaurant is through the foyer, as

above described, and by means of the two doors last described.

"18. There are no communicating doors directly from the restaurant to the bowling alleys, or vice-versa, and the only means of passing from the bowling alleys to the restaurant, or vice-versa, is through the basement vestibule above described".

The solution of the problem involves the application of the language of the statute to this particular factual situation. It should be emphasized, as detailed in the findings of fact which we have omitted, that there is no interlocking financial interest. Furthermore, appellee concedes that a bowling alley is a place of amusement. The real issue is whether the words "passage or communication" mean, as the Board contends, a possible method of going from one establishment to the other without use of the public highway. The court below took the position that a public foyer or common lobby in a commercial building, offering direct access from the sidewalk both to a place of amusement and to a licensed establishment, independently operated, is not a passage or communication within the prohibition of the statute. Our study leads us to the same conclusion.

Appellant relies primarily on *Martz's License*, 12 Pa. Superior Ct. 521, which was decided in 1900 under the Act of July 9, 1881, P. L. 162, the source of the present statutory language. That case involved an application for premises at the corner of Sixth and Court Streets in the City of Allentown, and the opinion contains the following statement: "We also agree with counsel that the mere fact that there is a place of amusement in a building does not necessarily make the whole building a place of amusement within the meaning of the act, nor make it unlawful, per se, to grant a license for the sale of liquors in any part of the building if there be no communication of any kind

between the two places and no possible way of going from one to the other without going into the public highway". While it is argued that this statement supports appellant's contention, subsequent language in the opinion makes it apparent that the decision was actually based upon the fact that the application was for the entire building. President Judge RICE goes on to say: "But granting that the court was not prohibited by the act of 1881 from granting a license for a particular room in the building, what is there in the petition clearly to show that the business was to be restricted to that place? Nothing. The description of the place for which license was desired more aptly describes the whole building than it does any particular part of it. If the license had been granted as prayed for no one would be able to say with certainty that it was a license to sell liquors in the lower northeast corner room of the premises at the northeast corner of Sixth and Court Streets and in no other part of those premises. The privileges granted by such license would have to be ascertained from the record and the certificate or license issued to the applicant, not from his oral declaration as to his intention made on the hearing. If the building contains a place of amusement within the meaning of the act of 1881, the premises as a whole could not be licensed".

The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature: Statutory Construction Act of May 28, 1937, P. L. 1019, Section 51, 46 P.S. 551. And see *Longo Liquor License Case*, 183 Pa. Superior Ct. 504, 132 A. 2d 899. We do not believe that the legislature intended the construction for which appellant contends. Certainly the statute itself does not spell out a requirement that the public highway must be used in going from the licensed premises to the place of amusement or vice versa. It is our view that the words "passage

or communication" contemplate a direct and immediate means of access from one to the other, a way which exists solely for the convenience of two related and connected establishments. We do not feel that the phrase may be extended to include a public foyer or common lobby of the type under consideration in the present appeal, and which cannot be said to be a part either of the licensed premises or of the independently operated place of amusement. Rather, it is a portion of the building which provides access to both establishments. In this respect there is no real difference, other than size and degree, between the instant shopping center and a large railway station where many businesses front on a common corridor, so that patrons may go from one to the other without setting foot on the public highway. We here note the ruling of a former Attorney General of the Commonwealth "that a restaurant may be entitled to receive a license even though a place of amusement is maintained upon the same premises, provided that there is no passage or communication between the two establishments, and that the same are entirely independent of each other". See *Liquor Licenses for Places of Amusement,* 27 Pa. D. & C. 1.

Appellant also contends that "public policy is against the granting of the license under these facts". The argument is made that great numbers of minors and young women now participate in the activity of bowling. Conceding this to be true, it does not proscribe the issuance of the instant license. So far as intervening distance is concerned, the legislature has not included places of amusement in the same category as churches, hospitals, charitable institutions, schools, and public playgrounds. See Section 404 of The Liquor Code, 47 P.S. 4-404. We therefore fail to perceive wherein the grant of a license in the case at bar will in any way be contrary to announced public policy. In

this connection we quote with approval the following excerpt from the well considered opinion of Judge MONROE, speaking for the court below:

"But substantial changes have come about since 1881 and 1900 in our social customs, modes of living, and community development. Both sexes, from an early age, whether as spectators, competitors, or participants, now engage in almost every variety of diversion, entertainment, recreation and sport. The ladies have entered almost all fields of business and employment. The increasing density of population has required community expansion vertically as well as horizontally, and therefrom has resulted a heterogeneous conglomeration, in a confined area, of commercial and recreational enterprises. Controlled community development through municipal planning and zoning has brought about the shopping center, through the segregation of all commercial activities, including restaurants, to defined and confined areas, frequently all in one building. The public highway and thoroughfare has, in effect if not in law, been extended into the automobile parking areas, the patios, corridors and foyers, of such centers and expansive commercial buildings, whereon the doors of the shops, restaurants, and recreational enterprises open, as in earlier years they did, upon the public sidewalks of our communities. . .

"Since the applicant has no financial or prohibited interest in the bowling alleys and no interest in the building wherein the proposed restaurant is to be located other than as lessee of the restaurant area from Jubilee Lanes, Inc., and the owner and operator of the bowling alleys has no interest, other than as lessor, in the applicant's restaurant or business, and the owner of the shopping center has no interest in either the restaurant or the bowling alleys, other than as lessor, and, consequently, there are no interlocking business interests, we are of the opinion that neither the foyer,

nor the basement vestibule thereof, in the Country Club Shopping Center, constitute, within the meaning of Section 463 of the Liquor Code, a passage or communication from the applicant's restaurant to or with the Jubilee Lanes, Inc. bowling alleys; and, as there is no direct and immediate opening between the bowling alleys and the restaurant whereby patrons of one might pass freely to the other without passing through the foyer mentioned, this appeal must be sustained".

Order affirmed.