## Windber Country Club License

*DiFrancesco & DiFrancesco*, for appellant.
*Walter A. Criste*, for Liquor Control Board.

MCDONALD, J., April 17, 1963.—This is an appeal of the Windber Country Club, a first class corporation located in Adams Township, Cambria County, Pennsylvania, from the refusal of the Pennsylvania Liquor Control Board, hereinafter referred to as board, to grant it a club liquor license. The board refused to issue the license for the following reasons:

"1. As provided by the law, Adams Township, Cambria County, has a quota of three licenses for the retail sale of liquor and malt beverages and there are presently seven such licenses in effect of the type counted against the quota. Accordingly, the license quota is exceeded. There are also four hotel liquor licenses and six club liquor licenses which, under the law, cannot be counted against the quota.

"2. The premises proposed to be licensed are not in a resort area as claimed by the applicant.

"3. There is no evidence of any necessity for an additional license in the township."

At the hearing de novo, it was stipulated the testimony taken before the board's examiner be made a part of the record. Additional testimony was offered by the appellant.

Appellant contends its property is located in a resort area, that a necessity exists for an additional license and, therefore, it should be issued under the Liquor Code of April 12, 1951, P. L. 90, art. IV, sec. 464, 47 PS §464, without regard to the quota limitation. Counsel for the board argues the evidence is insufficient to sustain appellant's position and, therefore, the quota restrictions being applicable, the appeal must be dismissed.

It is agreed the quota is filled in Adams Township. We must, therefore, determine if appellant's property is located in a resort area, and if so, is there a necessity for an additional license.

In our opinion, appellant has sustained the burden of proof and we make the following:

## Findings of Fact

1. Appellant is a corporation of the first class, incorporated by the Common Pleas Court of Somerset County for the following purposes:

"The operation and maintenance of a golf course and country club, tavern, restaurant, and cafe, and to acquire and hold necessary property to be used in furthering the purposes thereof, and the doing of all acts incidental to the accomplishment of said purpose."

2. Appellant is the owner of a tract of land situate in Adams Township, Cambria County, comprising 88 acres, and lessee with option to purchase of a contiguous 95 acre tract.

3. The aforesaid property is situate in a beautiful scenic area about six miles from Johnstown, a third class city, and six miles from Windber, a borough of 6,800 population.

4. Appellant's property is located:

(a) Adjacent to a tract of land owned by the Elton Sportsmen's Association, upon which there is constructed a pool, trapshooting range, and picnic accommodations;

(b) Two and one-half miles from the site of the multi-million dollar Johnstown College of the University of Pittsburgh now in the development stage;

(c) One-half mile from the site of a proposed 1,575 acre recreational area which will include a 50 acre lake, golf driving ranges, an 18-hole and 9-hole golf course, camp sites, trailer areas, boating accommodations, athletic fields, and a riding academy;

(d) Within several miles of the Dale Police and Fire Company picnic grounds;

(e) Three miles from the Elton Heights and Hillcrest Developments, now numbering about 60 to 70

new houses with a large area proposed for additional building;

(f) Two and one-half miles from the Johnstown-Cambria County Airport, a large facility handling commercial flights and private planes;

(g) Two miles from "Sandy Run", a county recreational area;

(h) Three miles from the Windber Recreation Park, a public facility with swimming pool, picnic area, pavilions, and children's rides. Over 100,000 people used this facility in 1962;

(i) Two miles from a recreational area being developed by a Pittsburgh church with shelters and picnic accommodations. It is proposed that buildings to accommodate 400 to 500 persons will be erected at this site;

(j) Two and eight-tenths air miles from the Babcock picnic area, owned by the Commonwealth and used by 5,975 persons in 1961;

(k) Nine and eight-tenths air miles and approximately 13 miles by highway, from Blue Knob State Park, a public recreational area comprising 5,000 acres, and offering hunting, fishing, camping, picnicking, hiking, group camp areas, and ski slopes, which are now under construction and will be operational in 1963-1964. This facility was used by 162,755 persons in 1961, and 297,519 persons in 1962;

(1) The land between appellant's property and Blue Knob State Park is principally mountains, forest and streams, with numerous picnic accommodations, a large area designated as State Game Lands, and a few small settlements.

5. There are approximately 300 rooms and motel accommodations within a seven mile radius of appel-

lant's property. Approximately 1,500 transients were accommodated by these facilities in 1962.

6. The area in which appellant's property is located offers fishing in fresh water streams, appellant's lake, and the Elton Sportsmen's Park; it is heavily used by hunters for small game and deer during the seasons.

7. The area is crossed by Interstate Routes No. 53 and No. 160; the secondary access roads are generally hardtopped and in good condition.

8. The club facilities consist of: a newly constructed single story building of modern design with dining room, lounge, and grille; a 9-hole golf course with an additional 9-holes already designed by an architect; a dam and fish pond; a skeet range and swimming pool are planned, as well as enlargement of the club house.

9. The physical plant is valued at $200,000.

10. Since the opening of the club on July 1, 1962, the dining room, lounge and grille have been used by numerous organizations for dinners and luncheons; reservations for future use have been received.

11. During the 1962 season, 3,000 guests used the club facilities; of these, 500 were from out-of-state.

12. Appellant's membership is 167; it numbers as members prominent business and professional persons of means who are capable of influencing the development of the area for recreation.

13. The membership is drawn from Windber, Johnstown, Southmont, Westmont, Beaverdale, South Fork, Dunlo, Gaistown, and the surrounding townships.

14. The quota of licenses for Adams Township is exceeded by four.

15. Appellant's property is situate in a resort and recreational area.

16. There is a necessity for a club liquor license for the pleasure, convenience, and general welfare of appellant's members, families, and guests.

## Discussion

The members of the Windber Country Club have constructed a beautiful modern facility in the scenic mountains and woodlands of Cambria County. This facility includes a golf course, dam, lake, and modern club house with dining room, lounge, and grille. It represents an investment of $200,000. The projected plans for additions, including a swimming pool, skeet range, enlargement of the golf course and club house, soon will be a reality. Its membership, drawn from numerous communities in a 15 mile radius, includes business and professional men who have a civic interest in the development of the area, as well as the ability and means to implement it.

While the immediate area in which the property is located is not developed physically to the degree that many larger resort and recreational areas are, it is used extensively by hunters and fishermen, sportsmen's organizations, a church group, family groups, and the members of the club, their families and friends. The motel accommodations, good roads, recreation facilities for swimming, hunting, fishing trapshooting, and picnicking, together with its easy access, all augur a rapid development.

That it is the most desirable area for recreation in southern Cambria County is evident by the regional development plans which include a park of 1,575 acres with lake and numerous other recreational facilities.

The imminent construction of Johnstown College of the University of Pittsburgh, approximately three miles from appellant's property, is a multi-million dollar project recently launched by a successful finance drive. This facility alone will bring to the area hun-

dreds of students, faculty, families and their friends who normally will seek recreational activities. In the past year, as evidence of future needs, appellant's golf course was used by the college team for tournament play.

We are impressed by the number of private and public recreational facilities located within a radius of five miles of appellant's property. This immediate area is linked by picturesque mountains, forests and streams, abounding in game and fish, numerous picnic accommodations, and state game lands, with Blue Knob State Park, one of the most scenic public parks in Pennsylvania and a mecca for nearly 300,000 visitors in 1962. And less than three miles away is the Babcock picnic area, a division of the Forbes State Forest.

While it is difficult to define a resort area in terms of physical facilities, the courts have described it as "a place frequented; a haunt": Bierman Liquor License Case, 188 Pa. Superior Ct. 200, 204. ". . . a place of frequent assembly, a haunt, for the entertainment of others and the inhabitants. We think a 'resort area' is one where people go for entertainment, relaxation and rest, where accommodations and means of amusement are maintained": Lance License, 83 D. & C. 150 (1952).

It is evident that appellant's property, itself a recreational facility, is located in an area of scenic mountains, forests and streams integrally connected to Blue Knob and Babcock State Parks. This is a large area and counsel for the board has strenuously objected to much of the testimony of facilities as being too remote. However, the Superior and Supreme Courts, in sustaining a lower court decree reversing an order of the board refusing to issue a catering club license, considered recreational facilities as far as 15 miles from

applicant's property: Willowbrook Country Club, Inc. Liquor License Case, 409 Pa. 370, 198 Pa. Superior Ct. 242.

In our view, the distance of the facility, while a factor, is not determinative if it is within reason and a part of a connected area to which people come in great numbers for varied recreational activities, entertainment and relaxation. There is ample evidence here that the State Parks above mentioned, joined as they are to appellant's property by a scenic area with natural attractions, together with the numerous public and private facilities, form an existing and fast growing resort and recreational area.

The question of necessity for a license is closely related to the determination of whether or not applicant's property is located in a resort area. In Willowbrook (pp. 374-375), the Supreme Court, adopting the language of the Superior Court, held that necessity is to be determined " '. . . in the light of the circumstances under which the applicant operates. "The term 'actual necessity' in determining the need for a liquor license will be given a broad construction so as to mean substantial need in relation to the pleasure, convenience and general welfare of the persons who make use of the facility." ' " See also William Penn Sportsmen's Association Liquor License Case, 196 Pa. Superior Ct. 519, 175 A. 2d 908 (1961) ; Minnichbach License, 24 D. & C. 2d 749 (1961), and Appeal of Elkview Country Club, 56 Lack. Jur. 32 (1955).

In Willowbrook, the applicant's property, with accommodations remarkably like appellant's, was located in an area where the recreation facilities were at a generally greater distance than in this case. The court reasoned (p. 375) that the existing licenses lacked facilities to serve the Willowbrook members and visitors and thus a need for an additional license

existed. We are satisfied an identical situation exists in this case and the necessity has been established.

We interpret the Willowbrook decision and the decision of the Superior Court in Wildwood Golf Club Liquor License Case, 199 Pa. Superior Ct. 353, as a broadening of the resort area definition, at least as to the types of facilities, the breadth of the area to be considered and its potential future development. With the new measure by which necessity for a license is determined in such cases, we must sustain this appeal.

### Conclusions of Law

1. Appellant's property is located in an existing and fast-growing recreational and resort area.

2. There is an actual necessity for the facilities which appellant can provide.

3. The Pennsylvania Liquor Control Board abused its discretion in refusing to issue a club liquor license to appellant.

4. The appeal must be sustained.

### Decree

Now, April 17, 1963, after hearing de novo on the appeal from the refusal of the Pennsylvania Liquor Control Board to grant a club liquor license to the Windber Country Club, it is ordered and decreed that the appeal be, and the same hereby is, sustained; and

The Pennsylvania Liquor Control Board is directed to issue to the Windber Country Club, a club liquor license for premises in Adams Township, Cambria County, Pennsylvania, R. D. No. 2, P. O. Box 256, Windber, Pennsylvania, as prayed for, upon their further compliance with the law, rules and regulations of the Pennsylvania Liquor Control Board in such cases made and provided.