## William Penn Sportsmen's Association Liquor License Case.

Argued November 16, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

Before KEIM, J.

*John E. Caputo,* Special Assistant Attorney General, with him *Horace A. Segelbaum* and *George C. Lindsay,* Assistant Attorneys General, and *David Stahl,* Attorney General, for Pennsylvania Liquor Control Board, appellant.

*Edward B. Doran,* for appellee.

OPINION BY WRIGHT, J., December 14, 1961:

On April 4, 1960, William Penn Sportsmen's Association, a nonprofit corporation, filed with the Pennsylvania Liquor Control Board an application for a club liquor license at premises in Loyalhanna Township, Westmoreland County. The Board refused the application on the basis of the following findings of fact: "1. As provided by the law, Loyalhanna Township, Westmoreland County, has a quota of one license for the retail sale of liquor and malt beverages, and there are at the present time two restaurant liquor licenses in effect which are counted against the quota. Accordingly, the license quota for the township is exceeded. There is also one hotel liquor license and one club liquor license in effect, which, under the law, cannot be counted against the legal quota. 2. The premises proposed to be licensed are not located in a

resort area, as claimed by the applicant. 3. There is no evidence of actual necessity for an additional license in the township". The Court of Quarter Sessions of Westmoreland County sustained an appeal by the applicant, and directed that the license should be issued. The Board has appealed to this Court. For a proper understanding of the factual situation, we set forth certain findings made by the hearing judge as follows:

"1. The Club House and premises proposed to be licensed is located in a newly developed vacation area known as Loyalhanna Woodlands, which is within a radius of two miles from a similar resort area called Mannitto Haven.

"2. The Loyalhanna Woodlands, in itself, presently consist of approximately 305 acres, and in additional thereto, the owners thereof, have an option to purchase an additional 260 acres of land which will be used in connection with the present acreage. There has been developed a plan of lots numbering 985, from which approximately 779 lots have been purchased, and at this time there are approximately 75 homes or cottages completed in that area and many under construction.

"3. The present facilities offer a playground for children, and we have every reason to believe that the planned recreational building will be completed in the near future. The owners of the area have constructed trap ranges, picnic grounds, soft ball courts, volley ball courts, and a bocci court.

"4. There is a boating dock on the premises, which has been used, and which will be enlarged in the near future. The area also has a huge fishing lake which has been completed, and the Loyalhanna Reservoir, which is nearby, will accommodate swimmers, water skiers, and various other water sport's activities. It has been established that there is a large swimming area in the lake, and that tons of sands have been provided in that area. The construction or conver-

sion of a present house is contemplated, and this building will act as a boat house.

"5. On both sides of the Loyalhanna Creek, the Pennsylvania Department of Forests and Waters, or the Game Commission, has reserved certain lands which will be used for game feeding and hunting. Other land has already been leased by the Loyalhanna Woodlands Corporation for the purpose of providing hunting facilities.

"6. In the year 1959, the operator in charge of the Loyalhanna Dam estimated that 110,000 persons plus visited this area and immediate vicinity, and estimated there were 7400 swimming and 15,000 boating days, all of which included the Mannitto Haven area, which is approximately 2.6 of a mile from the club house of the applicant.

"7. The nearest liquor license to either the Loyalhanna Woodlands Area or Mannitto Haven Area is approximately seven or eight miles away, and by the testimony of all persons present at all hearings, it was evident that the present licensees could not accommodate the influx of visitors in that area".

Notwithstanding the finding of the Board to the contrary, appellant now concedes that applicant's club house is in fact located within a "resort area", as we have defined that term. See *Bierman Liquor License Case,* 188 Pa. Superior Ct. 200, 145 A. 2d 876; *Kreiser Liquor License Case,* 188 Pa. Superior Ct. 206, 145 A. 2d 880. The question before us, as stated by appellant, is as follows: "Where the Court designates a locality to be a resort area, can a club liquor license be considered an actual necessity to the area?"

It is significant that appellant does not contend that there is no necessity for additional licenses in the area. The objection is limited solely to the type of license for which application has been made. It is argued that "a club liquor license or a catering club liquor

license with its many restrictions as to the retail sales of liquor and malt or brewed beverages can not take care of the seasonal influx of large numbers of temporary inhabitants and the other transient trade".

We of course agree with the appellant that the legislature did not contemplate the indiscriminate granting of licenses in resort areas without regard to actual need. However, "where the area is designated as a resort, we think necessity must be considered in the light of the circumstances under which the club operates".[1] The record discloses that the applicant performs its function under a lease from Loyalhanna Woodlands, a corporation which holds title to the land. Members of the club are the owners of summer homes and cottage sites in the development, together with selected friends and visitors who will be screened by an investigating committee. It seems apparent that the instant club license will supply a service which can not be adequately furnished by commercial establishments some seven or eight miles away. Indeed it is highly probable that a club license will serve this particular area much better than an ordinary hotel or restaurant license.

In brief, we agree with the hearing judge "that the applicant has produced sufficient testimony to show there is a necessity for the facilities which the William Penn Sportsmen's Association can provide". It is therefore our conclusion that the Court below properly sustained the applicant's appeal. Cf. *Levin Liquor License Case,* 196 Pa. Superior Ct. 328, 175 A. 2d 336.

Order affirmed.

---

[1] HOBAN, P. J., in *Appeal of Elkview Country Club,* 56 Lackawanna Jurist 32.