## Wildwood Golf Club Liquor License Case.

354

Argued June 15, 1962. Before Rhodes, P. J.,
Ervin, Wright, Woodside, Watkins, and Flood, JJ.
(Montgomery, J., absent).

*Lewis J. Nescott*, Special Assistant Attorney General, with him *George G. Lindsay*, Assistant Attorney General, and *David Stahl*, Attorney General, for Pennsylvania Liquor Control Board, appellant.

*Joseph S. D. Christof*, with him *Howard S. Auld*, and *McCloskey, Best & Leslie*, for appellee.

Opinion by Wright, J., November 15, 1962:

On May 1, 1961, Wildwood Golf Club, a nonprofit corporation, filed with the Pennsylvania Liquor Control Board an application for a club liquor license at premises in Hampton Township, Allegheny County.

Following a hearing before its examiner, the Board found that the applicant was "a bona fide club which fully complies with the statutory requirements", but refused the application on the ground that the township quota was filled. The Board denied the applicant's contention that "the premises proposed to be licensed are in a resort area", and also found that the applicant had failed to establish necessity for the issuance of an additional license in excess of the legal quota. The County Court of Allegheny County sustained an appeal by the applicant, and directed that the license should be issued. The Board has appealed to this court. The factual situation appears in the following excerpt from the opinion of the hearing judge:

"The appellant corporation is domiciled in Hampton Township, Allegheny County, Pennsylvania. Presently the applicant has 263 members. The members in private life are engaged in the professions, various businesses and civic affairs and are persons of good reputation. Forty-eight members, or less than one-fifth of the membership, reside in Hampton Township; the remaining 216 members reside in the neighboring townships and communities and many reside in the City of Pittsburgh. The corporation does not contemplate pecuniary gain or profit. The purposes for which it was formed are to promote and encourage athletic, social and recreational activities and to operate a country club, golf course, club house, et cetera.

"The applicant leases from Stone Lodge, Inc., a tract of land containing about 175 acres, situate on Sample Road, Hampton Township, Allegheny County, Pennsylvania. This tract of land has constructed on it a large attractive clubhouse, an eighteen hole golf course, 6 tennis courts, a swimming pool, baseball fields, a football field, 2 lakes, 2 cottages, a dwelling house and various facilities. Stone Lodge, Inc., is a

Pennsylvania business corporation. Ownership of stock in Stone Lodge, Inc. is not requisite to membership in Wildwood Golf Club. It does, however, result in some advantages. The members of Wildwood Golf Club are practically the same as the stockholders in Stone Lodge, Inc. Stone Lodge, Inc. purchased the real estate and the personal property and equipment used in the club facility from the University of Pittsburgh by instruments dated June 28, 1960, for a total consideration of $635,000.00. The present equity of the stockholders in Stone Lodge, Inc. is about $200,000.00. The University of Pittsburgh holds a purchase money mortgage on the club property on which the balance due is about $505,000.00.

"The property has been used for athletic and recreational activities for about thirty years. Initially, it was owned by Wildwood Country Club (not the applicant), which purchased it about 1928 and constructed the club house, golf course, swimming pool and other facilities. The country club use continued until about 1940. The property later was given to the Boy Scouts of America which operated it as the Hubbard Boy Scout Reservation for camping and boy scout activities. In 1955, the property was conveyed to the University of Pittsburgh which reconstructed the golf course, constructed tennis courts and again operated the property as a country club, known as Pitt-Wildwood Club, primarily for the recreation and athletic use and enjoyment of its faculty, varsity teams and students. As mentioned above, in June, 1960, the property was conveyed by the University to Stone Lodge, Inc. Since July 1, 1960, the property has been operated by Wildwood Golf Club whose original members came from the Pitt-Wildwood Club. The club's facilities are actively used by its members, their families and guests for golf, swimming, tennis, social gatherings, dancing, bridge, skating, tobogganing and skiing. The

golf course and tennis courts are used by the University of Pittsburgh varsity squads and by neighboring high school golf and tennis teams. The baseball and football fields are used by the Y.M.C.A., Little League and Pony League. These students using the golf course and tennis courts and leagues using the baseball and football fields are not permitted to use the club house or facilities other than those indicated. The bona fide character of the applicant organization, its membership and its purposes is beyond any question or doubt.

"The northerly boundary line of the club property is identical with the southerly line of North Park for a distance of about 2200 feet. North Park is a vast tract of land being 2275 acres in size, owned by the County of Allegheny. It is operated by the County as a public recreational area. It contains a large lake, an 18 hole golf course, large swimming pool, tennis courts, riding trails, ice skating rink, lodges and numerous groves for picnicking furnished with tables, benches, fire places, slides, swings, et cetera. Thousands of persons use the facilities of North Park particularly on week ends for golfing, swimming, picnicking, tennis, riding, fishing, skating, tobogganing, ball playing, et cetera. In addition to the public recreational facilities at North Park the area adjacent to the park is largely devoted to private recreational activities. In addition to Wildwood Golf Club, North Hills Country Club operates a public golf course adjacent to North Park. There also are a pitch and putt golf course, golf driving range, swimming pool, riding academy, shooting club and other recreational facilities adjacent to the park. The whole vast area is devoted exclusively to recreational, athletic and pleasurable activities. The Parks Division of Allegheny County estimates that on a summer week end approximately 65,000 persons visit North Park on Saturdays and 75,000 persons on Sundays, making a total of 140,000 persons on a weekend.

Thousands visit the area during week days and during the winter months. North Park proper embraces land in three townships, i.e., McCandless, Pine and Hampton Townships. The area surrounding North Park in the three townships mentioned is also used for recreational activities".

The decision of the court below is based upon a specific finding that the Wildwood Golf Club is located within a resort area. In the words of President Judge LENCHER: "The testimony of record from all the surrounding facts and circumstances makes mandatory a finding, and we do find that the appellant itself maintains and is a resort area, in addition to being a part of and adjacent to such an area". It is important to note that the Board came to this very same conclusion in two prior applications. In 1948 a retail malt beverage license was issued to Marie M. Hagan, and in 1955 a restaurant liquor license was issued to the North Hills Country Club. Both of these licenses were in excess of the quota, and were based on findings by the Board that the North Park region was a resort area. The Board now takes a position to the contrary, asserting that it is not bound by its prior findings. We will briefly consider the Board's first two contentions on this appeal. In our view of the case it is unnecessary to discuss the Board's third contention.

The Board first contends that: "A public park, owned and operated by a municipality or other political subdivision, which provides picnic groves, athletic facilities and amusements, but no overnight accommodations for the visitors or guests, is not a resort area within the meaning of the liquor code". This states the question much too narrowly. North Park itself is the hub of the general North Park area, which must be considered as a whole. Exhibit 2, and the accompanying photographs, shows the extensive resort area type facilities within a three and one-half mile radius

of the applicant's premises. Conceding that there is a seasonal influx of over two million people each year to the North Park region, appellant argues that these persons are not temporary inhabitants or a transient population because there are no suitable accommodations, citing *Bierman Liquor License Case,* 188 Pa. Superior Ct. 200, 145 A. 2d 876, and *Kreiser Liquor License Case,* 188 Pa. Superior Ct. 206, 145 A. 2d 880. The facts in the *Bierman* and *Kreiser* cases are readily distinguishable. The North Park area contains two motels, and the record discloses that there are overnight camping facilities used annually by some six thousand persons. In the light of our recent decisions in *William Penn Sportsmen's Association Liquor License Case,* 196 Pa. Superior Ct. 519, 175 A. 2d 908, *Mannitto Haven Liquor License Case,* 196 Pa. Superior Ct. 524, 175 A. 2d 911, and *Willowbrook Country Club Liquor License Case,* 198 Pa. Superior Ct. 242, 181 A. 2d 698, affirmed 409 Pa. 370, 187 A. 2d 154, and in view of the Board's prior findings, while not of binding effect, we are impelled to agree with the court below that the North Park region is a resort area within the meaning of the statute.

The Board's second contention is that: "An actual necessity does not exist for the issuance of a club liquor license in a resort area because the applicant club maintains it is a necessity for the more successful operation of the club". This question is not properly before us, as it was not raised in the lower court. See *Remmel v. Gallagher,* 190 Pa. Superior Ct. 100, 152 A. 2d 796; *Commonwealth ex rel. Brandt v. Brandt,* 195 Pa. Superior Ct. 48, 169 A. 2d 327; *Rosenfeld v. Rosenfeld,* 390 Pa. 39, 133 A. 2d 829. At the hearing on February 13, 1962, counsel for the Board made the following statement: "I further would like to point out the issue before this Court: Is the opposed application within a resort area to bring it outside the quota lim-

its? If the Court finds it is, the Appellant meets all other requirements of the Liquor Code". Our examination of this record clearly discloses that the only contention pressed by the Board in the lower court was that the North Park region did not come within the definition of a resort area.

It should perhaps be noted that the Board takes the position that there is no necessity for a club license in a resort area because it is a convenience solely for the club members, and will not serve the general public. To adopt the Board's contention would mean in effect that, if the quota is filled or exceeded, no club licenses could ever be issued in resort areas. We do not believe that this was the intention of the legislature. The statute does not limit the type of licenses to be issued in resort areas. As we pointed out in the *William Penn Sportsmen's Association, Mannitto Haven,* and *Willowbrook Country Club* cases, supra, the question of necessity in resort areas must be considered in the light of the circumstances under which the applicant operates. In this connection, the following testimony of the Board's enforcement officer on cross-examination is significant: "Q. How many club licenses are outstanding in Hampton Township? A. There is currently one club license in effect in that Township. Q. Would it be your opinion that the issuance of a club license would be too many for the Township? A. As a personal opinion I would say no . . . Q. Wouldn't you consider the issuance of this license to Wildwood Golf Club to be a matter of necessity to the club itself? A. Definitely it would be very important to the club itself . . . Q. It is a growing organization, is it not? A. It is a growing organization. And I might add for the record it is a very worthwhile organization".

Order affirmed.

MONTGOMERY, J., took no part in the consideration or decision of this case.