## Andes Grove Rod and Gun Club Liquor License Case.

Argued March 5, 1963.   Before RHODES, P. J., ER-VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*George G. Lindsay,* Assistant Attorney General, with him *Clement J. Reap,* Special Assistant Attorney General, and *David Stahl,* Attorney General, for Pennsylvania Liquor Control Board, appellant.

*William A. Degillio,* for appellee.

OPINION BY FLOOD, J., April 24, 1963:

The Pennsylvania Liquor Control Board refused a club liquor license to the appellee because the quota was exceeded in the township where the club was located, the area is not a resort area and there is no evidence of necessity for an additional license for the retail sale of alcoholic beverages in the township. This was reversed by the Quarter Sessions Court of Luzerne County which found that the Andes Club was located in a resort area to which there is a seasonal influx of

a large transient population seeking to enjoy its sport and recreational facilities, that the area is one of rapid growth and development, that the facilities available in the immediate vicinity for food and refreshment are not adequate to supply these needs and that the license would supply a service for which a demand exists. The court directed the board to grant the license and the board has appealed.

There are no specific findings by the court here such as there were in the *Willowbrook Country Club, Inc. Liquor License Case,* 198 Pa. Superior Ct. 242, 181 A. 2d 698, affirmed 409 Pa. 370, 187 A. 2d 154 (1962) to justify the court in overriding the board. In the *Willowbrook* case the court found that the area attracted 5,000 to 6,000 people yearly, that the facilities on the ground of the applicant included many and varied recreational facilities as well as dining facilities which were detailed, that plans were being made for additional recreational facilities which will attract more people, that the club has 465 members and it has made an investment of $300,000 in the area, that plans have been formulated for the erection of fifty or more private cottages and that the members of the club come from a wide area. Here the court's findings are that the property is centrally located in an area in close proximity to lakes and ponds "where fishing, swimming and boating actively prevail", that there are "a substantial number" of summer cottages in the area and "an increasing number" under construction, that picnicking, clambakes and amusement facilities are available conveniently, without any indication as to what these facilities are, and that there is a seasonal influx of "a large number of transient population" seeking to enjoy the sporting and recreational facilities in the area.

It will be seen that by comparison with the *Willowbrook* case, we have here only general, and not specific,

findings as a basis for the court's conclusion that the area for which the application is sought is a resort area. The mere fact that the neighborhood affords opportunities for fishing, boating and swimming does not of itself make it a resort area as that phrase is used in the statute. As the Supreme Court held in *Willowbrook Country Club, Inc. Liquor License Case,* the proviso in the act permitting an exception to the quota in a resort area "was intended . . . to render an equitable distribution of such licenses in areas, where during certain seasons, the population is increased to such an extent that the usual number of licenses is not adequate to serve the needs of the people."

There is no finding by the court in this case as to the extent of the population increase in the summertime. As contrasted with the specific finding in the *Willowbrook* case that the neighborhood attracted 5,000 or 6,000 persons yearly, we have here merely a general finding that there is a seasonal influx of a large transient population.

In the *Willowbrook* case the court found that the recreational facilities available included an 18 hole golf course, a 6,000 square foot clubhouse with kitchen facilities and a dining area to accommodate 300 people, an 8,000,000 gallon fishing lake, a sixteen acre camping ground, soft ball fields, skeet and trap shooting facilities, an area for archery and the roads and fairways used for skiing and tobogganing in the winter. Here the court finds nothing with regard to construction of any recreational facilities except that "picnicking, clambakes and amusement facilities are available conveniently in the area . . ."

Neither the Supreme Court nor this court has held that an area is a resort area merely because there are more people there during the summer than at other times, that it is one of the very numerous areas in Pennsylvania where people hunt, fish or boat and that

there are facilities for picnicking and clambakes and amusement facilities. The Quarter Sessions Court may not overrule the board's discretion without finding specific facts giving a basis for concluding that "during certain seasons the population is increased to such an extent that the usual number of licenses is not adequate to serve the needs of the people." The Liquor Control Board retains discretion to determine whether an area is a resort area and the court can reverse it only for an abuse of that discretion upon specific findings showing that the area meets the criterion above quoted from the *Willowbrook* opinion. Such reversal is warranted only when it is "quite obvious that the usual number of licenses would not be adequate to serve the people" at certain seasons when the population is greatly increased. *Bierman Liquor License Case,* 188 Pa. Superior Ct. 200, at p. 205, 145 A. 2d 876, at p. 879 (1958). It is not obvious under the findings of the court in this case.

The order of the court below is reversed and the order of the Pennsylvania Liquor Control Board is reinstated.