Petition of the Springdale District Sportsmen's Association from the Decision of the Pennsylvania Liquor Control Board In Refusing to Grant an Application for a Club Liquor License.

Springdale District Sportsmen's Association, Appellant.

Argued May 5, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*James Victor Voss,* with him *Neely* and *Voss,* for appellant.

*J. Leonard Langan,* Assistant Attorney General, with him *Harry Bowytz,* Chief Counsel, and *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., July 28, 1975:

Springdale District Sportsmen's Association (Applicant) appeals an opinion and order of the Court of

Common Pleas of Allegheny County which affirmed the Pennsylvania Liquor Control Board's (Board) denial of its application for a club liquor license. We affirm.

Applicant asks us to determine the following two issues:

1. Did the court below err in agreeing that the Board had not abused its discretion when it found that Frazier Township in Allegheny County was not a "resort area"?

2. Did the court below err in making findings of fact on a material issue which were different from those made by the Board?

This case gives us the opportunity to clarify that section of the Liquor Code which authorized a liquor license in a resort area.

The point of departure of our inquiry is Section 461(a) of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §4-461(a) which states:

"§4-461. Limiting number of retail licenses to be issued in each municipality.

"(a) No licenses shall hereafter be granted by the board for the retail sale of malt or brewed beverages or the retail sale of liquor and malt or brewed beverages in excess of one of such licenses of any class for each two thousand inhabitants in any municipality, exclusive of licenses granted to airport restaurants, municipal golf courses and hotels, as defined in this section, and clubs; but at least one such license may be granted in each municipality and in each part of a municipality where such municipality is split so that each part thereof is separated by another municipality, except in municipalities where the electors have voted against the granting of any retail licenses. Nothing contained in this section shall be construed as denying the right to the board to renew or to transfer existing retail licenses of any class notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore

prescribed; but where such number exceeds the limitation prescribed by this section, no new license, except for hotels, municipal golf courses and airport restaurants as defined in this section, shall be granted so long as said limitation is exceeded."

However, Section 461(b), 47 P.S. §4-461(b)· vests in the Board the power to grant additional licenses if in the opinion of the Board the locality is a *resort area.* The problem, as pointed out in previous appellate opinions, is that the Legislature has not defined the term "resort area." *See, e.g. Willowbrook Country Club, Inc. Liquor License Case,* 409 Pa. 370, 187 A.2d 154 (1962); *Bierman Liquor License Case,* 188 Pa. Superior Ct. 200, 145 A.2d 876 (1958).

Our Superior Court, which had jurisdiction over liquor license cases prior to the transfer of that jurisdiction to this Court, judicially interpreted the phrase "resort area." In *Riviera Country Club Liquor License Case,* 201 Pa. Superior Ct. 70, 191 A.2d 725 (1963), Judge WRIGHT summarized as follows:

> "The resort area exception has been considered by this court in seven prior cases. The first of these was Bierman Liquor License Case, supra, 188 Pa. Superior Ct. 200, 145 A.2d 876, which involved a rural township in Carbon County, a municipality containing excellent facilities for hunting and fishing. It was emphasized in our opinion that facilities for hunting and fishing are not peculiar to any locality in the Commonwealth. In defining the term 'resort area' we made the following statement here pertinent: 'The proceedings before the legislature at the time of the enactment of the original statute disclose that *this exception to the quota rule "was drafted solely for the purpose of having an equitable distribution of licenses" in areas wherein, at certain seasons, the "population" is greatly increased, "making it quite obvious that the usual number of licenses would not*

*be adequate to serve the people." It is apparent that the legislature contemplated the seasonal influx of a large number of temporary inhabitants and the presence of suitable accommodations for this "transient population." '*

"The Bierman case was held controlling in a companion appeal involving another township in Carbon County. See Kreiser Liquor License Case, 188 Pa. Superior Ct. 206, 145 A.2d 880. Our most recent decision on this type of factual situation is Andes Grove Rod and Gun Club Liquor License Case, 201 Pa. Superior Ct. 21, 190 A.2d 355, which involved a similar township in Luzerne County. Speaking for this court in reversing an order of the court below directing the grant of a license in that case, Judge FLOOD stated: '*The mere fact that the neighborhood affords opportunities for fishing, boating and swimming does not of itself make it a resort area as that phrase is used in the statute.*'

"*Our other four decisions* fall into a different category. In each of them the region under consideration was clearly a resort area and *the main issue was that of necessity for the license.* The Board is not pressing that question in the case at bar. William Penn Sportsmen's Association Liquor License Case, 196 Pa. Superior Ct. 519, 175 A.2d 908, involved Loyalhanna Township, Westmoreland County, part of a large and extensively promoted recreational territory known as Laurel Highlands. It was conceded by the Board on appeal that this region was a resort area. The Board's objection was limited solely to the question of necessity for the type of license sought by the applicant. Our companion decision in Mannitto Haven Liquor License Case, 196 Pa. Superior Ct. 524, 175 A.2d 911, involved the same region. Willowbrook Country Club Liquor License Case, 198 Pa. Superior Ct. 242, 181 A.2d 698, involved Allegheny Township,

Westmoreland County, an extension of Laurel High-
lands. The nature of this general territory as a resort
area was in effect admitted by the Board's enforce-
ment officer. The Willowbrook decision was affirmed
on appeal by the Supreme Court. See Willowbrook
Country Club Liquor License Case, 409 Pa. 370, 187
A.2d 154. Our decision in Wildwood Golf Club Liquor
License Case, 199 Pa. Superior Ct. 353, 185 A.2d 649,
involved a portion of Hampton Township, Allegheny
County, which had been twice before determined by
the Board to be a resort area. The premises for which
the license was sought immediately adjoined North
Park, a vast tract of land owned and operated by the
County of Allegheny as a public recreational area.
Aside from North Park itself, there were extensive
resort area type facilities within a three and one-half
mile radius of the applicant's premises.

"It is our view that the term 'resort area,' as used
by the legislature, necessarily connotes a territory al-
ready given over to resort purposes. This was plainly
the factual situation in each of the four cases cited in
the preceding paragraph. The applicant club in each
of them was situated in an area which had been
previously established by the public as a place of
resort. The instant factual situation is entirely dif-
ferent. Riviera has done no more than to itself create
for its members a place of recreation in a predomi-
nently residential community not heretofore con-
sidered to be a resort area. If a private country club
is to be granted a license under such circumstances
and without regard to the quota limitation, the mem-
bers of the General Assembly must so ordain. We
may not resolve Riviera's problem by an unwarranted
extention of the resort area exception. To do so would
be to emasculate the quota law by judicial legislation."
(Emphasis added.) 201 Pa. Superior Ct. at 74-6, 191
A.2d at 727-28.

It is also noteworthy that a factor overlooked in the review of the case law in *Riviera* is the consideration that the fact that an area is rural is not, of itself, controlling. *Bierman, supra.* In addition, there must be specific findings as to influx of transients. It is not sufficient to say the number of people in the area increases during a certain season. What is required is a specific finding such as that found in *Willowbrook,* that there was an increase of 5,000 to 6,000 persons yearly in the region at peak periods. *Andes Grove, supra.*

After *Riviera* came *Aqua Club Liquor License Case,* 202 Pa. Superior Ct. 192, 195 A.2d 802 (1963), which was another necessity case. There, the Superior Court cited the broad language of our Supreme Court opinion in *Willowbrook Country Club, supra,* which defined necessity: "The requirement of necessity in a resort area must be considered in light of the circumstances under which the applicant operates. The term 'actual necessity' in determining the need for a liquor license will be given a broad construction so as to mean substantial need in relation to the pleasure, convenience and general welfare of the persons who would make use of the facility." *Aqua Club, supra,* 202 Pa. Superior Ct., at 195, 195 A.2d at 804. However, the Court in *Aqua Club,* speaking about a club license in a resort area, added another important necessity factor. Necessity is not related to demands of the general public. A need for the pleasure, convenience, and general welfare of the club members is the norm rather than the convenience or necessity to the entire resort area.

Summarizing, we find that the following factors should be considered by the Board in determining whether a local area, in itself, is a resort area.

1. There must be a seasonal influx of transients which causes the population of the area to swell so that existing licensees cannot adequately meet the needs of the area.

2.  A resort area need not necesarily be rural in character and rural in character is in no way the governing standard.

3.  The existence of "opportunities" for recreation such as hunting, fishing, swimming, boating, camping, picnicking, etc. does not qualify the area as a "resort." Their existence must have been, in fact, adequately established by competent evidence, and found so to be as a matter of law.

We venture to suggest the criteria of necessity are as follows:

1.  The circumstances of the Applicant should be viewed with relation to the need of persons making use of the facility.

2.  Actual necessity is the need of the area for the additional license. To this end, inquiry should be directed to 1) the number and types of establishments already operating in the area; 2) the clientele served by the existing licensees; and 3) the clientele intended to be served by the Applicant.[1]

3.  Recognize the distinction between the need of club licenses or club catering licenses in a resort area, for the purposes of its individual members and the needs which qualify the issue of other licenses.

4.  Necessity is a legal issue which demands competent evidence in support thereof.

Before us now is postured the following factual situation:

Applicant sought a club license in what it contends is a resort area in Frazier Township, Allegheny County.[2]

---

1.  We realize that licensees, no matter how proximate or numerous, "may" indeed serve disparate segments of the transient influx.

2.  The issue of necessity is not before us on appeal.

The property is rural in nature, a twelve acre tract upon which is constructed a clubhouse with a kitchen, dining

room and lavatory. Relevant portions of the record tell us that safety hunter courses are given to the children on club premises, and roasts are held. Riding trails are on the premises which are used by the general public. Children enjoy fishing, boating and lifesaving classes. Hikes and nature trips initiate from the premises through the neighboring countryside. A local real estate appraiser expressed his opinion that the area was a resort area using as his measure the property's location, size and use, its rural nature and a prospective increase in population of 184% by the turn of the century.

But, the record is devoid of evidence which would help the Board's determination of specific population influx. It had no evidence that the people in the area who use the facility are transients. Simply put, we have before us nothing more than an estimate of the people potential by 2000 A.D. On this state of the record, it is impossible to distinguish whether this is a purely local endeavor or it does, indeed, service a transient segment of influx of population. This being so, we find no abuse of discretion by the court below.

Applicant's final contention that the court below erred in substituting its findings of fact for the Board's is without credible or legal foundation.

Consistent with the foregoing, the order of the Court of Common Pleas of Allegheny County which affirmed the Liquor Control Board when it denied Applicant's (Appellant) application for a club liquor license is affirmed.