In Re: Appeal of Penn State Faculty Club From Refusal of Pennsylvania Liquor Control Board to Grant New Club Liquor License.

Penn State Faculty Club, Appellant *v.* Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellee.

Argued September 14, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., MENCER, ROGERS and BLATT. Judge WILKINSON, JR. did not participate.

*John C. Gilliland, II,* with him *McQuaide, Blasko & Brown, Inc.,* for appellant.

*David Shotel,* Assistant Attorney General, with him *Harry Bowytz,* Chief Counsel, and *Robert P. Kane,* Attorney General, for appellee.

*Richard W. Cleckner* and *Jerome T. Foerster,* for amicus curiae, State College Tavern Association.

OPINION BY JUDGE MENCER, January 10, 1978:

The Penn State Faculty Club appeals to this Court to hold that The Pennsylvania State University and the immediately surrounding area is a resort within the meaning of Section 461 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §4-461.

The Faculty Club's 300 members, most of whom are teachers and administrative personnel from the University's main campus in State College, are attempting to obtain a new club liquor license. The license would allow alcoholic beverages to be available at a new clubhouse building on the main campus. This building was built and is owned by the University, which leases it to the Faculty Club.

Problems have arisen because State College's quota of 16 licenses for the retail sale of alcoholic beverages is already exceeded by six. In addition, there are five hotel liquor licenses, one club liquor license, and two catering-club liquor licenses which are not counted against the quota. The Faculty Club therefore applied to the Pennsylvania Liquor Control Board (Board) to determine whether in its opinion, the Bor-

ough of State College is located within a "resort area." Such a determination, coupled with a finding that the Faculty Club members actually need the license, would allow the Board to issue a license to the Club pursuant to Section 461. *See Willowbrook Country Club, Inc. Liquor License Case,* 409 Pa. 370, 187 A.2d 154 (1962); *Application of Dorothy R. Hohl,* 20 Pa. Commonwealth Ct. 490, 342 A.2d 493 (1975). *See also Petition of Springdale District Sportsmen's Association,* 20 Pa. Commonwealth Ct. 479, 342 A.2d 802 (1975); *Riviera Country Club Liquor License Case,* 201 Pa. Superior Ct. 70, 191 A.2d 725 (1963).

After extensive hearings, the Board issued an opinion finding that the quota for the municipality was exceeded as hereinbefore indicated, that the clubhouse on the main campus was not located within a resort area, and that necessity for an additional retail liquor license had not been established. It therefore refused to grant a new club liquor license, and the Faculty Club appealed to the Court of Common Pleas of Centre County.

Pursuant to Section 464 of the Liquor Code, 47 P.S. §4-464, the lower court heard the application de novo on questions of fact and administrative discretion. Without making specific findings, the lower court concluded that the record justified the Board's finding that the Borough of State College is not within a resort area. The Court noted in particular that recreational facilities between 10 and 25 miles from The Pennsylvania State University campus did not effectively create a resort area surrounding the campus and that to call the campus itself a resort would be an insult to a fine university. Affirming the Board on the resort-area issue, the Court sustained the refusal to issue a license to the Faculty Club.

On appeal to this Court, the Faculty Club contends that the Board abused its discretion in failing to issue

a license. In particular, the Club maintains that it was an abuse of discretion not to consider recreational activities more than 10 miles from the campus and to determine that the activities which drew large numbers of transients were not resort activities. We disagree.

Initially, we note that our scope of review is limited because the discretion to determine whether or not a municipality is located within a resort area is vested in the Board by the express language of the Liquor Code, and there must be a clear abuse of administrative discretion before our courts are authorized to set aside the Board's action. *Chukker Valley Golf Club, Inc. v. Pennsylvania Liquor Control Board,* 20 Pa. Commonwealth Ct. 321, 341 A.2d 212 (1975) ; *Bierman Liquor License Case,* 188 Pa. Superior Ct. 200, 145 A.2d 876 (1958).

In determining whether the Board clearly abused its discretion in finding that the clubhouse was not located within a resort area, we are unaided by the Liquor Code, which leaves undefined the term "resort." Nevertheless, we are guided by the intention of the Legislature, *see Willowbrook, supra,* as derived from several sources. It has been recognized that

[t]he proceedings before the legislature at the time of the enactment of the original statute disclose that this exception to the quota rule 'was drafted solely for the purpose of having an equitable distribution of licenses' in areas wherein, at certain seasons, the 'population' is greatly increased, 'making it quite obvious that the usual number of licenses would not be adequate to serve the people.' It is apparent that the legislature contemplated the seasonal influx of a large number of temporary inhabitants and the presence of suitable accommodations for this 'transient population.'

*Bierman, supra,* 188 Pa. Superior Ct. at 204-05, 145 A.2d at 879 (footnote omitted).

However, this exception to the quota rule must be interpreted in light of the fact that "[t]he Liquor Code was enacted for the purpose of regulating and restraining the sale of liquor and not for the purpose of promoting it." *Id.* at 206, 145 A.2d 879.

With this purpose in mind, and guided by the able briefs of counsel, we have carefully examined the instant record. It reveals that throughout the year there are occasional influxes of transients into State College. While there is conflicting testimony as to whether and when the influx is such as to make it quite obvious that the usual number of licenses would not be adequate to serve the people, it is generally agreed that there are occasional days when it is difficult to quickly obtain desired service. These include those six fall Saturdays when visitors come to *watch* the football team play at its home field, an orientation week for incoming students, and the periodic continuing education programs held at the Continuing Education Conference Center on the campus. Other testimony suggested that Mother's Day and days of alumni reunions were also busy. The record does not reveal that service is at all strained during the other noteworthy athletic, cultural, and recreational events occurring on the campus of The Pennsylvania State University.

Nor does the record indicate that the temporary population which is indisputably drawn to recreational facilities outside the Borough of State College strains service within the Borough. This is not surprising since, of those recreational facilities outside State College which attract other than local visitors, only Stone Valley Recreation Area[1] is less than 14

---

[1] Stone Valley Recreation Area is part of The Pennsylvania State University.

miles from the main campus. Both Black Moshannon State Park and Bald Eagle State Park are located 22 miles from the campus.

In addition, the record establishes that there are room accommodations available to visitors of the Penn State area, including university residence halls which are widely used by continuing education participants. The record also reveals that the university-owned Faculty Club building is a mere 44 feet from the nearest licensed premises, the Nittany Lion Inn, which is also owned by the University. Further, of the 22 State College premises holding a retail liquor license, 18 are less than eight-tenths of a mile from the Faculty Club premises and the others are less than 2 miles from the Club building.

We hold that the instant record does not support a determination that the Board clearly abused its discretion. As to whether the campus itself should be termed a resort, we note that no center for educational and intellectual instruction has yet been so demeaned by the courts of this Commonwealth. Clearly, a legitimate question arises as to whether the type of activity which on this record could suggest occasionally slow service in State College is that contemplated by the Legislature when it chose to use the term "resort." Without judicial precedent to support a contrary position,[2] we cannot say the Board clearly

---

[2] In the past, areas in which large transient populations have seasonally engaged in swimming, boating, fishing, water skiing, skin diving, skating, tobogganing, skiing, shooting, hunting, archery, riding, camping, picnicking, tennis, baseball, softball, football, volleyball, golf, dancing, or bridge have been found to be resort areas. See *Kennells Mills Sportsmen's Club, Inc. v. Pennsylvania Liquor Control Board*, 20 Pa. Commonwealth Ct. 487, 342 A.2d 809 (1975); *Aqua Club Liquor License Case*, 202 Pa. Superior Ct. 192, 195 A.2d 802 (1963), *allocatur denied* (1964); *Wildwood Golf Club Liquor License Case*, 199 Pa. Superior Ct. 353, 185 A.2d 649 (1962), *allocatur denied* (1963); *Willowbrook Country Club, Inc. Liquor License*

abused its statutory power to form an opinion on the issue.

As to whether the area surrounding the campus should be termed a resort area, we note the absence of authority for the proposition that transient-drawing recreational facilities[3] located between 14 and 22 miles from State College can effectively create a resort area surrounding the municipality.[4] The lower court's observation on this point is not without merit: "If these facilities effectively create a resort area, one may as well call the entire State of Pennsylvania a resort area and forget the licensing quotas. Pennsylvania is dotted with dams, lakes, fishing facilities and parks within easy driving distance from nearly every

*Case*, 198 Pa. Superior Ct. 242, 181 A.2d 698, *aff'd* 409 Pa. 370, 187 A.2d 154 (1962) ; *Mannitto Haven Liquor License Case*, 196 Pa. Superior Ct. 524, 175 A.2d 911 (1961) ; *William Penn Sportsmen's Ass'n Liquor License Case*, 196 Pa. Superior Ct. 519, 175 A.2d 908 (1961). Notable by their absence are occasional spectating and participating in alumni reunions, orientation week programs, and continuing education programs.

[3] "Clearly the mere fact that there are heavily used recreational facilities in the general vicinity of the applicant cannot in itself establish such a seasonal population increase. It may well be in fact that the parks and recreational facilities are used primarily by the very people who live in the area." *Chukker, supra*, 20 Pa. Commonwealth Ct. at 324, 341 A.2d at 213.

[4] *See Springdale, supra* (whether local area, *in itself*, is resort area) ; *Wildwood, supra* note 2 (applicant was *itself* resort and was adjacent to and part of general North Park area which included extensive resort type facilities within 3½-mile radius of applicant) ; *Willowbrook, supra* note 2 (applicant was *4, 6, and 15 miles*, respectively, from three facilities which attracted thousands of people yearly) ; *William Penn, supra* note 2 (applicant was approximately *2.6 miles* from heavily used recreational facilities). *See also Chukker, supra* (opportunities existed up to 32 miles from applicant) ; *Andes Grove Rod and Gun Club Liquor License Case*, 201 Pa. Superior Ct. 21, 190 A.2d 355, *allocatur denied* (1963) (applicant centrally located in *close proximity* to lakes and parks affording opportunities).

community in Pennsylvania." 12 Centre C.L.J. 17, 20 (1976). *Cf. Chukker, supra* (where recreational opportunities are located up to 32 miles from applicant, that any part of county could be termed a resort area is a patently ridiculous idea). *See also Bierman, supra,* 188 Pa. Superior Ct. at 205-06, 145 A.2d at 879.

The Legislature has seen fit to entrust to the Board the duty of equitably distributing liquor licenses where obviously inadequate service is caused by a large seasonal influx of transients using local "resort" facilities. Where, as here, the Board receives and considers evidence on the issues and makes an order which neither violates the purpose of the Liquor Code nor ignores law or fact nor is otherwise clearly arbitrary and unreasonable, we are not authorized to substitute our views and reverse such an order.

Affirmed.

### ORDER

AND Now, this 10th day of January, 1978, the order of the Court of Common Pleas of Centre County in the above-captioned matter, dated December 17, 1976, is hereby affirmed.

---

DISSENTING OPINION BY JUDGE ROGERS:
I respectfully dissent.
Section 461(b) of the Liquor Code provides that:
(b) The board shall have the power to increase the number of licenses [beyond established quotas] in any such municipality which in the opinion of the board is located within a *resort area.* (Emphasis added.)

Although the term resort area is not defined by the Legislature in the Liquor Code, the Supreme Court in *Willowbrook Country Club, Inc. Liquor License Case,* 409 Pa. 370, 373-74, 187 A.2d 154, 155-56 (1962), has provided the following definitions:

'[A] place frequented in numbers; a popular place of entertainment or recreation'. . . . 'A place of frequent assembly.'

In the same case the Supreme Court held that the Legislature's intention in the enactment of Section 461(b) was

to render an equitable distribution or [liquor licenses] in areas, where during certain seasons, the population is increased to such an extent that the usual number of licenses *is not adequate to serve the needs of the people.* (Emphasis in original.)

*Willowbrook, supra,* 409 Pa. at 373, 187 A.2d at 155. By the *Willowbrook* definition a resort area is necessarily a place where people go to find recreation or entertainment. This Court has held that one characteristic of a resort area is that it experience a seasonal increase of population, *Petition of Springdale District Sportsmen's Association,* 20 Pa. Commonwealth Ct. 479, 342 A.2d 802 (1975); that the increase of population must be the result of the visitation of transients, *Chukker Valley Golf Club, Inc. v. Pennsylvania Liquor Control Board,* 20 Pa. Commonwealth Ct. 321, 341 A.2d 212 (1975); and that the increase in population must be established by specific numerical evidence. *Petition of Springfield District Sportsmen's Association, supra. See also Kennells Mills Sportsmen's Club, Inc. v. Pennsylvania Liquor Control Board,* 20 Pa. Commonwealth Ct. 487, 342 A.2d 809 (1975).

After numerous hearings resulting in a record unusually voluminous for this class of case, the Board's Hearing Examiner concluded that the facility was located within a resort area and that Pennsylvania State University Faculty members, University people, needed the license. The Hearing Examiner therefore recommended that the Pennsylvania State University

Faculty Club's application be granted. A part only
of the Hearing Examiner's report is as follows:

The principal issue to be determined before the
Examiner . . . is whether or not the area of the
Borough of State College can be properly classi-
fied as a resort area by the Board. Substantial
testimony was offered by witnesses on behalf
of the applicant which indicated that in certain
seasons of the year a substantial influx of
population occurred with the bulk of the per-
sons using facilities connected with the Uni-
versity on a transient basis. The numerous ex-
hibits offered by applicant through various wit-
nesses substantiated the very large number of
individuals attending functions during the sum-
mer as well as during other times in the fall of
the year in Centre County, Pa. Of particular
importance in the finding and determining
whether or not Centre County qualifies as a re-
sort area was the testimony of Mr. Christian-
sen, who, in the opinion of the Examiner, con-
stitutes an expert in the area of recreational
planning and evaluation of recreational facili-
ties. His testimony indicated that the Borough
of State College is the nucleus of a resort or
recreational in-flow area providing a large num-
ber of recreational type and resort type facili-
ties, many of which are connected to the Uni-
versity activities and others which are physical-
ly located outside the Borough itself but are
services by the Borough, including such things
as hunting, fishing, horseback riding, boating,
etc.

The second substantial consideration for the
Examiner was the question of whether, assum-
ing that the establishment proposed to be li-
censed is located in a resort area as claimed,

that there is necessity for an additional retail club liquor license which would provide pleasure and convenience and general welfare for those club members who would make use of the facility. Significant testimony was offered by a number of witnesses regarding the need for both on-campus and satellite campus faculty and administrative personnel as to an actual need for a facility of the type requested. Testimony indicated that the businesses presently serving the community were not adequately equipped to supply the need of those persons frequenting the area and in turn, specifically could not provide for those members of the faculty and administration. The Supreme Court of Pennsylvania has interpreted Section 4-461 (b) to mean that the Board is required to predicate the issuance of any license under that Section upon a finding of actual need for the license. Willowbrook Country Club, Inc., 409 Pa. 370, 187 A.2d 154 (1962). The Court reviewed the matter further in the Springdale District Sportsmen's Association v. Pennsylvania Liquor Control Board—No. 922 C.D. 1974. In that case the Court established four matters for review in determining the question of necessity. (1) The circumstances of the applicant should be viewed with relation to the need of persons making use of the facility. (2) Actual necessity is the need of the area for the additional license. To this end, inquiry should be directed to (a) the number and types of establishments already operating in the area; and (b) the clientel served by the existing licenses; and (c) the clientel intended to be served by the applicant. (3) To recognize the distinction between the need of Club Licenses or Club catering licenses in a resort area,

for the purposes of its individual members and the needs which qualify the issue of other licenses. (4) Necessity is a legal issue which demands competent evidence in support thereof.

The testimony offered before your Examiner appears to have met all of the qualifications established by the Court in the Springdale case (Supra). Testimony was offered indicating the need on behalf of members of the faculty and administration for a facility of the type proposed by the applicant, and secondly, sufficient testimony was offered as to the number and types of establishments already operating in the area with clear indication as to the type of clientel served by most of the existing licensees with a distinction being made as to the clientel intended to be served by the applicant. While, as expected, there is a conflict in the testimony between witnesses for the applicant and those testifying on behalf of the State College Tavern Association, it is your Examiner's opinion that he must give greatest weight and credibility to the testimony of the applicant's witnesses as there was no credible testimony from any party who could establish that his place of business or residence was located within 500 feet of the proposed licensed establishment. All testimony offered by persons appearing on behalf of the alleged protestants resided beyond the 500 foot area and conducted their business operations in many cases well beyond the 500 foot area.

The only other license presently operating within 200 feet of the proposed establishment is operated by Penn State University who hold a hotel-liquor license trading as the Nittany Lion

Inn which is only 40 feet from the proposed premises. The University Trustees have taken a position that they are not in opposition to the proposed granting of this Club license and in fact recommend the acceptance of the application.

The premises are located within 300 feet of a restrictive institution—Pennsylvania State University, which is an educational facility— however, the Board of Trustees has also further indicated that they will not oppose the proposed granting of the license and in fact believe that the same would be of benefit to the University faculty and administration. At the time of the original investigation no written lease had been executed evidencing the right of the proposed applicant to occupy premises which were under construction; however, that problem was remedied prior to the time of the hearing and a written lease was introduced as applicant's exhibit #35 and further exhibits were offered, particularly applicant's exhibit #31, 32 and 33 which indicated that the organization is in fact a nonprofit corporation established to promote the intellectual, professional and social interests of the academic community at Pennsylvania State University and the same has been determined by the Internal Revenue Service to be an exempt social club as set forth under applicant's exhibit #32.

In summary, the testimony indicates that the University's sports programs draw 'in excess of 500,000 people yearly' to the Borough of State College and in addition there are numerous facilities of a resort area nature within a reasonable driving distance from State College Bor-

ough providing camping, fishing, and other out-
door recreational activities. As further evi-
dence of the large number of persons drawn to
the community his testimony indicated that
there is in excess of 500 hotel and motel guest
rooms within 10 miles of the proposed prem-
ises, most of which are located within the imme-
diate Borough area. Testimony by the investi-
gating officer indicated that the clientel of ex-
isting licensees is primarily 'a younger crowd
connected with the University' and there was
further testimony by many of the witnesses that
the existing licensed facilities were not in a po-
sition to provide service during certain times of
the year—particularly on football weekends and
during other times when great numbers of peo-
ple were drawn to the University. Additional
testimony was offered, however, with respect
to the necessity relative to the pleasure, conve-
nience and general welfare of the particular
group, ie faculty on-campus and off-campus and
administration both on and off campus. Credi-
ble testimony was offered by several witnesses
that no existing facility located in State Col-
lege Borough or nearby could offer service on
a regular basis that would provide for the
pleasure and convenience and general welfare of
the Club members that would make use of those
facilities. There was testimony indicating that
the premises would be located within 200 feet
of one other licensed establishment—the Nit-
tany Lion Inn—but the operator of said facility
did not enter into any written protest. In addi-
tion, testimony indicated that this facility would
be located within 300 feet of Pennsylvania State
University (an educational institution) but
there was no protest entered on behalf of that

institution and in fact, testimony indicates that the institution is in favor of granting the proposed application as the same would benefit the University's faculty and administration.

The Hearing Examiner's careful evaluation of the evidence on record stands in remarkable contrast to the Board's decision denying the application, which reads in full as follows:

OPINION

On May 13, 1975, Penn State Faculty Club filed with this Board on a prior approval basis an application for a new club liquor license for premises at University Park, State College, Centre County.

On October 16, November 12 and 20, December 10, 15, 1975 and January 7, 1976, hearings on said application were held after due notice, as required by law. At the said hearings, which were attended by numerous protestants, the protestants' attorney, numerous witnesses on behalf of the applicant and the applicant's attorney, the evidence adduced established the following facts:

1. As provided by law, State College, Centre County, has a quota of 16 licenses for the retail sale of alcoholic beverages and there are 22 restaurant liquor licenses in effect of the type counted against the quota. Consequently, the quota for this municipality is exceeded. There are also 5 hotel liquor licenses, 1 club liquor license and 2 catering club liquor licenses in effect which are not counted against the quota.

2. It has not been established that the establishment proposed to be licensed is located in a resort area.

3. It has not been established that there is a necessity for an additional retail liquor license in the Borough of State College, Centre County.

The Board, after giving careful consideration to all of the facts established at the hearing, is of the opinion that the said application for new club liquor license should be refused and makes the following Order:

ORDER

AND Now, June 29, 1976, for the above reasons, it is ordered and decreed that the application for new club liquor license applied for by Penn State Faculty Club for premises at University Park, State College, Centre County, be and it is hereby refused.

The opinion of the court below dismisses the contention that the immediate vicinity of the University's campus is a resort area by the following paragraph:

If we look within the Borough, it is apparent that a great number of short term visitors attend events on the Penn State campus such as athletic events, conferences and cultural and alumni events. However, to call the Penn State campus a resort area would be an insult to a fine university. The main thrust of the activities associated with the University, with few exceptions, are intellectual in nature and not for vacations or resort purposes. We find it difficult to classifly visitors to the University campus as a seasonal influx of transients or a seasonal increase in population. We therefore affirm the Pennsylvania Liquor Control Board that State College is not within a resort area.

The Pennsylvania State University supports its Faculty Club's application for a license to serve controlled beverages. For this and other reasons, I am

impelled to record my amazement to learn that the lower court and my friends, the majority of this Court, believe that an educational institution is demeaned by the suggestion that it is located in, or indeed that its campus is, a resort area—defined by the Pennsylvania Supreme Court as a "popular place of entertainment or recreation." Who would say that the Company of the Metropolitan Opera is debased by the fact that it performs to full houses? I also believe that the people of Lewistown, Mifflintown and Thompsontown would be astonished to discover that the persons travelling through their communities to and from the Borough of State College on Fall weekends are seeking intellectual, not recreational, satisfactions. I agree that the seasonal influx of students would not make every college town a resort area; I strongly believe, however, that the highly popular cultural, recreational, theatrical and athletic offerings of the Pennsylvania State University, together with the University's location far from the State's two great cities, constitute its locality "a place frequented in numbers," "a popular place of entertainment and recreation" and "a place of frequent assembly"—in short, a resort area.

This record clearly establishes that Pennsylvania State University's programs attract visitors from other places on a seasonal basis far in excess of the 5,000 to 6,000 annual influx which satisfied the Supreme Court in *Willowbrook, supra*. In 1975, the University's football games alone were attended by more than 300,000 persons, 100,000 of whom came from places other than Centre County.

Since the record also clearly demonstrates a need for the additional license sought by the members of the Pennsylvania State University Faculty Club, I would reverse the order below and direct the Board to issue the license.

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:
I must respectfully dissent.

As noted by Judge MENCER, the term "resort area" is not statutorily defined. However, in interpreting the legislative history of the Liquor Code, the definition of the term has been construed by the Courts of this Commonwealth to depend on the needs of the people. As stated by Mr. Justice EAGEN (now Chief Justice) in *Willowbrook Country Club, Inc. Liquor License Case,* 409 Pa. 370, 374-75, 187 A.2d 154, 156 (1962), and reiterated by this Court in *In Re: Application of Dorothy R. Hohl,* 20 Pa. Commonwealth Ct. 490, 492, 342 A.2d 493, 494 (1975), "the requirement of necessity in a resort area must be considered in light of the circumstances under which the applicant operates, 'The term "actual necessity" in determining the need for a liquor license will be given a broad construction so as to mean substantial need in relation to the pleasure, convenience and general welfare of the persons who would make use of the facility.' "

The majority opinion does not adequately address the needs of The Pennsylvania State University faculty members.