Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant *v.* The New Greensburg Aerie Fraternal Order of Eagles No. 3920, Inc., Appellee.

Argued March 15, 1984, before Judges CRAIG, DOYLE and PALLADINO, sitting as a panel of three.

*Eileen S. Maunos,* Assistant Counsel, with her, *Felix Thau,* Assistant Counsel, and *Gary F. DiVito,* Chief Counsel, for appellant.

*Gregory T. Nichols,* for appellee.

OPINION BY JUDGE CRAIG, May 8, 1984:

The Pennsylvania Liquor Control Board appeals an order of the Court of Common Pleas of Westmoreland County which reversed the board's denial of an application for a new club liquor license filed by the New Greensburg Aerie Fraternal Order of Eagles, No. 3920, Inc.

The common pleas court heard the matter de novo, and received additional testimony and a significant amount of documentary evidence which the club had not produced at the board hearing. The court was therefore permitted to substitute its findings of fact for those of the board, and to reverse on the basis of its own findings. *Ruse Appeal,* 67 Pa. Commonwealth Ct. 299, 447 A.2d 331 (1982). We must determine whether substantial evidence supports the court's

findings that Greensburg is located within a resort area and that the members of the Eagles Club need the liquor license.[1]

The Eagles Club is located in the City of Greensburg in Westmoreland County. At the time of application, the city had well in excess of its quota of eight retail liquor licenses, with twenty-two restaurant liquor licenses and one retail dispenser eating place license issued to establishments within the municipality. In addition, two hotel, fourteen club and two catering club licenses, none of which are counted against the quota, were in effect at that time.

The Eagles Club applied for a new club liquor license, arguing that it is located in a resort area and therefore falls within the quota limit exception in section 461(b) of the Pennsylvania Liquor Code,[2] 47 P.S. §4-461(b), which provides in part: ''The board shall have the power to increase the number of licenses in any . . . municipality which in the opinion of the board is located within a resort area.'' The applicant bears the burden of proving that (1) the premises sought to be licensed are located within a resort area, and (2) there is a need for the additional license within the area. *Springdale District Sportsmen's Association Liquor Case,* 20 Pa. Commonwealth Ct. 479, 342 A.2d 802 (1975).

Because the legislature has not defined ''resort area,'' the courts have developed a large body of law attempting to arrive at a judicial definition of the term. In *Bierman Liquor License Case,* 188 Pa. Superior Ct. 200, 145 A.2d 876 (1958), the Superior

---

[1] Where, as here, the court of common pleas makes findings different from the board, they must be supported by substantial evidence to sustain the court's order. *Brandywine Valley Inn, Inc. Appeal,* 53 Pa. Commonwealth Ct. 203, 417 A.2d 823 (1980).

[2] Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§1-101 to 9-902.

Court characterized the purpose of the resort area exception as follows:

> The proceedings before the legislature at the time of the enactment of the original statute disclosed that this exception to the quota rule "was drafted solely for the purpose of having an equitable distribution of licenses" in areas wherein at certain seasons the "population" is greatly increased, "making it quite obvious that the usual number of licenses would not be adequate to serve the people." It is apparent that the legislature contemplated the seasonal influx of a large number of temporary inhabitants and the presence of suitable accommodations for this "transient population."

*Id.* at 204-05, 145 A.2d at 879.

The courts have gradually refined the law surrounding the resort area exception, and in *Springdale District Sportsmen's Association Liquor Case,* the Commonwealth Court stated the key factors to be considered by the Liquor Control Board:

> 1. There must be a seasonal influx of transients which causes the population of the area to swell so that existing licensees cannot adequately meet the needs of the area.
>
> 2. A resort area need not necessarily be rural in character. . . .

*Id.* at 485-86, 342 A.2d at 802.

In *Aiello v. Pennsylvania Liquor Control Board,* 41 Pa. Commonwealth Ct. 345, 399 A.2d 154 (1979), we held that the evidence necessary to establish the existence of a resort area must be *specific* and must relate to the number and size of the recreational facilities in and around the municipality, their proximity to the applicant's premises, the seasons during which the facilities are used and the number of people who use them.

We negated the necessity of proving "suitable accommodations" for the transient influx in *Pennsylvania Liquor Control Board v. Eastcourse, Inc.*, 60 Pa. Commonwealth Ct. 83, 430 A.2d 1029 (1981), where we decided that such evidence is relevant in determining whether the recreational opportunities are used primarily by transients or local residents, but is not determinative where other evidence establishes that the resort attracts people from other areas. Further, in *Myers v. Pennsylvania Liquor Control Board,* 499 Pa. 76, 451 A.2d 1000 (1982), *rev'g* 62 Pa. Commonwealth Ct. 570, 437 A.2d 483 (1981), the Supreme Court held that the Commonwealth Court standard, which looked solely to the number of hotel and motel rooms available in the area and disregarded the thousands of campsites and vacation home lots in the vicinity, was unreasonable because not in accord with the realities of present-day recreational travel modes.

Also, we must interpret the resort area exception in light of the fact that the Liquor Code was enacted for the purpose of restraining, rather than promoting, the sale of liquor. *Penn State Faculty Club v. Pennsylvania Liquor Control Board,* 33 Pa. Commonwealth Ct. 320, 381 A.2d 1017 (1978).

The thrust of the Eagles Club argument is that Greensburg is located in a resort area because Westmoreland County is one of four counties[3] comprising the general area known as the Laurel Highlands which offers numerous recreational opportunities. The club produced evidence in the form of travel pamphlets and brochures promoting ski areas, lakes and rivers, campgrounds, state parks, retail outlets, museums, art and folk festivals, and many other historic, cultural and natural attractions in the Laurel Highlands. Further

---

[3] The Laurel Highlands is composed of Westmoreland, Fayette and Somerset Counties in their entirety, and the southern portion of Cambria County.

evidence established that the Pennsylvania Department of Commerce has designated the entire Laurel Highlands as a resort area, encompassing all of Westmoreland County and the City of Greensburg. Of course, that designation is not conclusive as to the legal determination of whether Greensburg is in a "resort area" for purposes of the Liquor Code.

In earlier cases addressing the resort area exception in the Laurel Highlands, the Liquor Control Board conceded that the particular municipality involved was located within a resort area. *Mannitto Haven v. Pennsylvania Liquor Control Board*, 196 Pa. Superior Ct. 524, 175 A.2d 911 (1961); *William Penn Sportsmen's Association v. Pennsylvania Liquor Control Board*, 196 Pa. Superior Ct. 519, 175 A.2d 908 (1961). In *Willow Brook Country Club v. Pennsylvania Liquor Control Board*, 409 Pa. 370, 187 A.2d 154 (1962), the Supreme Court adopted the Superior Court rationale in the same case for finding that Allegheny Township in Westmoreland County was in a resort area. The Superior Court opinion emphasized that Allegheny Township was "situated in a fast growing recreational district which is actually an extension of Laurel Highlands." The Superior Court also noted that the Pennsylvania Liquor Control Board "virtually admitted" that this "general territory" is a resort area in *Mannitto Haven* and *William Penn*. The question of whether the City of Greensburg is a resort area has not been addressed by the board, and, of course, a concession by the board is not binding precedent for this court.

Liquor licenses are established on a municipality basis, rather than a county or "general territory" basis. Section 461 of the Code, 47 P.S. §4-461(a). The statute does not state whether or not the board is to establish exceptions to the quotas using like boundaries—an approach which could afford some consis-

tency and convenience in administering the law, but which could produce harsh results if mechanically applied.

However, evidence that there are numerous recreational attractions within a vast 3,000 square-mile area[4] cannot establish that a particular municipality within that area is "located within a resort area." This court has held that recreational facilities thirty miles from the applicant's premises do not establish the existence of a "resort area," *Chukker Valley Golf Club v. Pennsylvania Liquor Control Board,* 20 Pa. Commonwealth Ct. 321, 341 A.2d 212 (1975), nor do facilities within fourteen to twenty-two miles, *Penn State Faculty Club v. Pennsylvania Liquor Control Board,* 33 Pa. Commonwealth Ct. 320, 381 A.2d 1017 (1978). In *Chukker,* we cited with approval the trial court's conclusion which is equally applicable here: "From the listing of recreational facilities [the applicant] claims are in the same vicinity as its premises, appellant would have us believe all of Montgomery County is a resort area, an idea which is patently ridiculous." 20 Pa. Commonwealth Ct. at 325, 341 A.2d at 213.

At the other end of the spectrum is *Appeal of Brandywine Valley Inn, Inc.,* 53 Pa. Commonwealth Ct. 203, 417 A.2d 823 (1980), where we held: "In today's mobile society, a distance of four to seven miles is not so remote as to be excluded from the immediate area of applicant's premises, especially in view of a population influx of one million people." *Id.* at 208, 417 A.2d at 826.

The record establishes that the City of Greensburg itself attracts tourists to its county courthouse, train station and art museum, and that fishermen frequent Twin Lakes. However, the club produced no specific

---

[4] The Laurel Highlands is approximately sixty miles west to east and forty-five miles north to south.

evidence as to how many people visit these attractions, nor whether they are transients or local residents. The associate director of the Laurel Highlands Tourist Promotion Agency testified that the following events take place within two to fifteen miles from the City of Greensburg:

1. Old Hannastown Fleatiques
2. Westmoreland Arts and Heritage Festival
3. Hannastown Folk Festival
4. Westmoreland County Air Show
5. Rolling Rock Races (indefinitely cancelled in 1983).
6. Laurel Highland Games
7. Fort Ligonier Days

The director testified specifically as to the dates and length of each event, the actual distance of each from Greensburg and an estimate of the number of persons attending each event, but did not produce any specific evidence distinguishing the number of transients from local residents attracted by the events.

Further, the events listed are primarily in the nature of festivals and shows held between the months of June and October. This kind of event is not peculiar to Greensburg and its surroundings. On the contrary, activities in honor of the historical significance of a community, or in celebration of the arts are quite common throughout Pennsylvania, particularly during the warmer months. If the legislature intended a municipality to be "located within a resort area" simply because such events occur within a fifteen-mile radius, then virtually every municipality in the Commonwealth would fall within the resort area exception, making it utterly meaningless. Of course, we cannot presume the legislature intended such an unreasonable result, 1 Pa. C. S. §1922(1), and we must construe the Liquor Code so as to give effect to all its provisions. 1 Pa. C. S. §1921(a).

Therefore, we conclude that substantial evidence does not support the court's finding that Greensburg is located within a resort area. Because this issue is dispositive of the case, we do not reach the issues of necessity and proximity to other licensed premises.

Accordingly, we reverse.

### ORDER

Now, May 8, 1984, the order of the Court of Common Pleas of Westmoreland County, dated February 14, 1983, at No. 74 Civil 1982, is reversed, and the order of the Pennsylvania Liquor Control Board, dated August 6, 1982, refusing the application for a new club liquor license by the New Greensburg Aerie Fraternal Order of Eagles No. 3920, Inc., is reinstated.