## In Re: Appeal from Denial of Restaurant Liquor License Application of Scarfalloto Brothers, Inc., t/a Two Guys from Italy, R.D. #3 Montrose, PA

*Laurence M. Kelly*, for appellants.

*Gary F. DeVito*, for Pennsylvania Liquor Control Board.

GARDNER, *P.J., Specially Presiding*, December 29, 1982—Appellants filed an application for a liquor license to the Pennsylvania Liquor Control Board under §461(b) of the Liquor Code, Act of April 12, 1951, P.L. 90, as amended, 47 P.S. §4-461(b), the "resort area" exception.

The act provides as follows:

"The board shall have the power to increase the number of licenses in any such municipality which in the opinion of the board is located within a resort area."

After hearing, the board refused to grant the license, making the following findings:

"1. As provided by law, Bridgewater Township, Susquehanna County, has a quota of 1 license for the retail sale of alcoholic beverages and there are presently 2 restaurant liquor licenses in effect which are counted against the quota. Consequently, the quota for this municipality is exceeded. There is also 1 catering club liquor license in effect which is not counted against the quota.

2. The Board is not satisfied that the establishment proposed to be licensed is located within a resort area.

3. It has not been established that there is a necessity for an additional retail liquor license in Bridgewater Township."

An appeal from the board's refusal was filed to this court, and a trial de novo was held pursuant to the Liquor Code, supra.

We affirm the board.

Under the provisions of the Liquor Code, supra, we may make findings different from those made by the board, but we may not substitute our discretion for that of the board. In Re: Brandywine Valley Inn, Inc., 53 Pa. Commw. 203, 417 A. 2d 823 (1980).

From the evidence adduced at the hearing de novo before us held on August 19, 1982, we find the following facts:

1. Appellants own and operate a restaurant in Bridgewater Township, a municipality adjacent to Montrose Borough and situate in Susquehanna County, Pa.

2. Appellants' restaurant, the largest such establishment in the township, seats 150 people and maintains a complete menu.

3. The statutory quota of restaurant liquor

licenses for Bridgewater Township is one, but there are presently two such licenses issued and operating in the municipality.[1]

4. The following evidence of increased populaton in certain time periods in the area was adduced:

A. Appellants' business volume increases 40 percent in the summer.

B. A former gasoline station operator experienced an increase in summer business when he was so engaged.

C. Summer business of a local beer distributor increases 20 percent.

D. Grocery sales in one such store increases 45-50 percent in the summer.

E. Catholic Church attendance increases by 200 persons per week in the summer.

F. The local hospital at one point during the summer had 111 "non-resident" patients.

G. Camp Susquehannock, a summer camp for youths located 11 miles from appellants' premises, attracts visits by relatives of campers.

H. There is an increase in banking activity in the summer and during hunting season.

I. Thirty-seven lakes exist within the "service area" of Bridgewater Township.

J. 2,274 non-resident hunting licenses and 2,502 non-resident fishing licenses are issued yearly by Susquehanna County.

1. Apellant reasoning that because Bridgewater Township has two operating licenses, one in excess of existing quotas, the Liquor Control Board must have previously determined the township to be a resort area is fallacious for the reasons set forth by the board's counsel. The board points out that the quota was two at one time and that both licenses presently operating in the township flow from that period and that upon the reduction of the quota to one, both previous licensees were "grandfathered." We accept this explanation.

K. The Montrose Bible Conference attracts 35,000 annual visitors from 38 states.

5. The following evidence of area accommodations for transients or summer residents was produced:

A. A campground eight to ten miles west of Montrose Borough has space for 500 people in the summer.

B. Another campground three miles from appellants' restaurant serves 300 summer visitors.

C. 4,100 "seasonal hookups" of the electric utility serving the area exist within 13 to 17 miles of appellants' restaurant.

## DISCUSSION

Appellants may prevail only by showing that their establishment is located in a "resort area" and that a necessity exists for the additional license.

The statute, Liquor Code, supra, does not define "resort area"; hence, resort must be had to case authority.

In Re: Aiello, 41 Pa. Commw. 345, 399 A. 2d 154 (1979), sets forth criteria accepted generally—"a territory that experiences a seasonal increase of population as a result of visitation of transients."

In this matter, much evidence was produced concerning non-resident and transient usage of Susquehanna County. The attraction of the area was presented as a combination of the beauties of nature blessed by a salubrious climate in summer and, in other seasons, the sports of hunting and fishing.

Appellants contend that they have proven the existence of a "seasonal influx" of persons in the increase in their own business, the testimony of the former gas station owner of his summer business

increase, increases in business in the summer of a beer distributor, a grocery store, a gift shop, local hospital usage, existence of a summer camp, increases in banking activity, and increases in average weekly Catholic Church summer attendance.

Appellants further argue that the "resort area" concept is strengthened by evidence of the availability of 70 camp sites approximately three miles from appellants' restaurant, "literally thousands" of summer residences within an area "reasonably close" to the restaurant,[2] 4,100 "seasonal" electrical hookups within 13 to 17 miles of the restaurant, and that 25 to 28 percent of the properties in the township are recreational in nature.

The obvious question raised by such statistics is what percentage of users are part of a "seasonal influx." Appellants answer this question by making a series of deductions:

1. "Recreationers" who are year-long residents would not increase the business of banks and shops.

2. The number of non-resident hunting and fishing licenses must include a "substantial number from out of state."

3. The amount of "travel-generated payrolls" attributed to Susquehanna County must imply

2. The record does not reveal evidence to support arguments such as made by appellants—that there are "literally thousands" of summer residents in the area served by appellants' restaurant, nor does the record allow a definition of what appellants mean by an area "reasonably close" to appellants' restaurant. It is true that testimony was received that 25 to 28 percent of the township properties were recreational in nature, but there is no evidence to show whether ownership of such is residential or non-residential. So, too, a difficulty is experienced in interpreting what is meant by "seasonal" electrical hookups when viewed in the context of appellants' obligation to prove a "transient influx" as compared to residential users.

that a location near the center of the county is "reasonably close to the center of this tourist activity."

We would further add that the absence of local accommodations has not been considered determinative of the resort area label, if the record otherwise demonstrates that the area's facilities are used primarily by temporary transients or tourists and not by area residents. Application of East Course, Inc., supra.

We do not find that appellants have sustained their burden of establishing a significant number of transient influx in such a way as to allow us to compare it to total usage of facilities nor anything so unusual concerning the area that would make it instantly recognizable as an extraordinary tourist attraction.

We cannot resist ending this opinion by stating our belief that few, if any, areas of the world can boast the beauty and scenic splendor of rural Northeastern Pennsylvania, of which Susquehanna County is a bright example. Nothing herein should be read to indicate that this court's belief is any way diminished in that regard.

However, notwithstanding our belief, this offers no sustenance to appellants' obligation and burden of proof.

In view of this court's holding that a resort area was not established by appellants, it is not necessary to address the question of the necessity for the service proposed by appellants.

## ORDER

And now, December 29, 1982, for the reasons set forth in the accompanying opinion, it is ordered that the denial of the Pennsylvania Liquor Control

Board of the application for restaurant liquor license heretofore made by appellants, Scarfalloto Brothers, Inc., t/a Two Guys from Italy, be and the same is affirmed and the appeal above captioned dismissed.

Finally, appellants recount evidentiary support for the proposition that Susquehanna County is blessed with an abundance of natural recreational advantages.

The board, on the other hand, counters by submitting that the presence of recreational facilities, standing alone, is not sufficient to support a "resort area" conclusion. It further asserts that summer or cottage residents are not transients but, in effect, full-time residents for a part of the year.

The board agrees that Susquehanna County has visitors but that 35,000 of them attend the Montrose Bible Conference.

Because no statutory standards for defining the "resort" concept exist, we believe it is necessary to examine comparatively recent actions of appellate courts in determining the existence or non-existence of such areas. Our research, and that of counsel, revealed the following:

1. Cases in which a resort area was not deemed to have been established:

A. Chukker Valley Golf Club Inc. v. Commonwealth, Liquor Control Board, 20 Pa. Commw. 321, 341 A. 2d 212 (1975)—four parks within ten miles of the applicant club; six more parks within 30 miles and two amusement parks and two race-tracks within 32 miles of the applicant. The court pointed out that "the mere fact that the neighborhood affords opportunities for fishing, boating and swimming does not of itself make it a resort area."

B. Penn State Faculty Club v. Commonwealth, 33 Pa. Commw. 320, 381 A. 2d 1017 (1978)—

recreational facilities between ten and 25 miles from Pennsylvania State College campus did not effectively create a resort area surrounding the campus. In this case the Commonwealth Court noted that the Liquor Code was enacted for the purpose of regulating and restraining the sale of liquor and not for the purpose of promoting it.

C. In Re: Baier, 35 Pa. Commw. 226, 385 A. 2d 630 (1978)—40 percent increase in the volume of mail in the location within a rural area is not sufficient. (Susquehanna County case)

D. Commonwealth of Pennsylvania Liquor Control Board v. Remley, 62 Pa. Commw. 477, 436 A. 2d 1250 (1981)—lack of evidence as to the number of transient people who entered the area to use facilities caused a failure of proof that a resort area existed.

2. Cases in which resort area was found proven:

A. Application of East Course, Inc., 60 Pa. Commw. 83, 430 A. 2d 1029 (1981)—the applicant course handled 35,000 rounds per season and accommodated 100 to 150 cross-country skiers per weekend in the winter; within five miles two other golf clubs, one nationally known, were located; 200,000 persons were attracted into Plumb Borough (normal population, 25,000) annually; a 1,074-acre park frequented by 100,000 persons for use of the ski facility and 100,000 pool users in the summer located within five miles.

B. In Re: Brandywine Inn Valley Inn, Inc., supra—where records showed more than 1,000,000 persons visiting many attractions in the Brandywine Valley area and the applicant's proposed facility was unique in that it would specialize in handling buses and had capacity much greater than any other facility.

We also note, in reading the cases, that the

applicants must prove that the increase of population must result from the visitation of transients (Chukker Valley Golf Club, supra) and the increase in population must be established by specific numerical evidence (Petition of Springdale District Sportmen's Association, 20 Pa. Commw. 479, 342 A. 2d 802 (1975).

We have two particular problems with the approach of appellants in the instant matter. First of all, although much evidence of percentages of increase of business volume and related assertions has been received, there is no way to compare the significance of these alleged increases, since no evidence was received as to the volume of normal usage and experience. Appellants would have us believe that that is not particularly important because it is undoubtedly true that Susquehanna County communities could not show numerical statistics which approached the kind of usage referred to in the Brandywine and East Course cases, simply because of the sparse population of the area. However, we have to regard the record as unpersuasive when we consider the obligation of appellants to *clearly* show the board abused discretion when it did not find Bridgewater Township to be within a resort area.

As an example, the record does not include at any point what the population of Bridgewater Township is in the first instance. Nor does the record establish "normal" Catholic Church attendance, nor ordinary business volume in the many references made to those establishments which experience increases at certain times of the year.

Our second problem is similar to the first. Much of the argument of appellants is based upon inference and assumption. The three that are set forth earlier in this opinion are not necessarily conclusions which we reach in a careful review of the evidence.

We do not conclude that "recreationers" who live in the area all year long do not increase the business of banks and shops. Nor are we able to determine what is meant by a "substantial number" of out-of-state residents as being included in the non-resident hunting and fishing licenses. It is just as easy to conclude that many persons from adjoining counties in Pennsylvania provide the "substantial number" referred to by appellants.

We have absolutely no basis to sectionalize what appellants refer to as "travel-generated payrolls" attributable to Susquehanna County as a whole.

Finally, with respect to the evidence, we found most impressive as a statistic of transient influx the attendance and participation in Montrose Bible Conference. This stands out as by far the greatest statistic of such "users" who come into the area served by appellants. However, even appellants could not assume or infer that persons attracted by the Bible Conference would constitute a transient population requiring service such as appellants propose to offer.

Nor do we find much supportive value in reasoning that family members who visit youths at camp represent likely groups whose needs are unmet within the context of the subject matter of this appeal.

As pointed out by the board's counsel, the Commonwealth Court, as indicated by its quote in Penn State Faculty Club v. Commonwealth, supra, has not indiscriminately attached the label "resort area" in Pennsylvania. That case approvingly quoted the following statement by the very able former president judge of Centre County, Paul Campbell, as follows: "If these facilities effectively create a resort area, one may as well call the entire state of Pennsylvania a resort area and forget the

licensing quotas. Pennsylvania is dotted with dams, lakes, fishing facilities and parks within easy driving distance from nearly every community in Pennsylvania."

In the same vein, this court through its president judge, the Honorable Donald O'Malley, again as quoted by the board's counsel and alluded to by appellants, eloquently described the very area in which appellants operate, in In Re: Baier, supra, in the following language: "The attraction of our area aptly describes many other portions of our glorious Commonwealth. The hunting and fishing are certainly not peculiar to this locality. Indeed, if Montrose may be declared to be a resort area, then a similar designation may be applied to any other rural section in which hunting and fishing are available. Such a rule would stretch the concept of a resort area far beyond anything contemplated by the legislation. It would constitute an ingenious procedure whereby the legal limitations on the issuance of licenses could be bypassed and the quota law, in areas such as this, made hopelessly inoperative and ineffective."

Finally, we would note the submission by appellants subsequent to the filing of briefs of the recent Supreme Court opinion in Myers v. Pennsylvania Liquor Control Board, Supreme Court of Pennsylvania, no. 1885, C.D. 1980. This case reversed the Commonwealth Court and reinstated the order of the Court of Common Pleas of Wayne County, which had found the northern end of Lehigh Township in that county to be a resort area because of the existence of "several thousand campsites and vacation home lots" in the vicinity of the proposed establishment, numerous recreational facilities attracting seasonal visitors, and the lack

of any licensed establishments in the northern portion of the township.

The Supreme Court held that the seasonal influx of a large number of temporary inhabitants and the presence of suitable accommodations for this transient population were factors contemplated by the legislature in the determination of resort area. Specifically, the court found that the existence of "thousands of campsites and vacation home lots" in the vicinity of the proposed licensed establishment constituted "suitable accommodations."

We find the Myers case less helpful to appellants than they. It appears to disagree with the Commonwealth Court only in that the Commonwealth Court failed to find campsites as suitable accommodations. We do not find this case as changing the law generally, and the factual circumstances reviewed earlier in this opinion and by a number of other cases of the Commonwealth Court sufficiently convince us that it is still necessary to show the influx by a significant number of persons who are proven to be users of available facilities in order to satisfactorily determine existence of a resort area.