Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant *v.* Bridgeport Young Men's Club, Appellee.

14

Argued March 12, 1984,

*Eileen Sonaumus*, with her, *Felix Thau*, Assistant Counsel, and *Gary F. DiVito*, Chief Counsel, for appellant.

*Charles C. Gentile*, for appellee.

OPINION BY JUDGE BARBIERI, July 12, 1984:

The Pennsylvania Liquor Control Board (Board) appeals here from an order of the Court of Common Pleas of Fayette County which reversed the Board's denial of a club liquor license requested by the Bridgeport Men's Club (Club). We reverse.

From the record before us it appears that the Club is a social organization having 276 members, almost all of whom live in the Brownsville, Pennsylvania area. In August of 1981 the Club applied to the Board for a club liquor license for its clubhouse in Brownsville pursuant to the resort area exception specified in Section 461(b) of the Liquor Code (Code)[1] which provides that "[t]he board shall have the power to

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §4-461.

increase the number of licenses in any . . . muncipal-ity which in the opinion of the board is located within a resort area." After a hearing on the request, the P.L.C.B. denied the Club's application making the following pertinent findings of fact:

2. The Board is not satisfied that the establishment proposed to be licensed is located within a Resort Area.

3. It has not been established that there is a necessity for an additional retail liquor license in Brownsville, Fayette County.

4. There is not a substantial need for such license (sic) in relation to the pleasures, convenience and general welfare of the club members who would make use of the facilities.

Following a de novo review of the Board's decision on appeal, however, the common pleas court reversed. In its decision the court noted that the "granting of this application would serve to increase membership and expand the club's activities to the benefit of the various charitable and civic organizations which it supports[,]" and further noted that the Brownsville area "draws numerous visitors to the historical sites of Nemocolin Castle, the Cast Iron Bridge and St. Peter's Gothic Church, which are all within a one-mile area of the Club." The only finding made by the court, however, on the question of whether there was a necessity for the licensed premises was the court's finding that "[t]he club is located in the Laurel Highlands resort area and, as such, can satisfy the needs of both its local members and of those visiting the area." The present appeal followed.

Before this Court the Board asserts that the Club did not present sufficient evidence to the Court to warrant the granting of a club liquor license. We agree.

Since it appears that the common pleas court and the Club in its brief to this Court have misperceived the legal test which an applicant for a club liquor license under the resort area exception must meet, we shall briefly review the applicable case law in this area.

Although the term "resort area" is not defined in the Code, our Supreme Court has recognized that the General Assembly's intention in adopting this exception to the licensing quota was "to render an equitable distribution of . . . licenses in areas, where during certain seasons, the population is increased to such an extent that the usual number of licenses *is not adequate to serve the needs of the people.*" *Willowbrook Country Club, Inc. Liquor License Case,* 409 Pa. 370, 373, 187 A.2d 154, 155 (1962) (emphasis in original). We have accordingly held that an applicant seeking a license pursuant to the resort area exception enunciated in Section 461(b) of the Code must establish that there is "a seasonal influx of transients which causes the population of the area to swell so that existing licensees cannot adequately meet the needs of the area." *Petition of Springdale Sportsmen's Association,* 20 Pa. Commonwealth Ct. 479, 485, 342 A.2d 802, 802 (1975).

An applicant then, of course, must establish that the proposed licensed facility would help meet this need. In this regard the oft quoted rule has been that "the requirement of necessity in a resort area must be considered in the light of the circumstances under which the applicant operates. 'The term "actual necessity" in determining the need for a liquor license will be given a broad construction so as to mean substantial need in relation to the pleasure, convenience and general welfare of the persons who would make use of the facility.' " *Aqua Club Liquor License Case,*

202 Pa. Superior Ct. 192, 195, 195 A.2d 802, 804 (1963) (quoting *Willowbrook Country Club, Inc. Liquor License Case,* 198 Pa. Superior Ct. 242, 246, 181 A.2d 698, 700 (1962), *aff'd* 409 Pa. 370, 187 A.2d 154 (1962)). Since a club will generally only serve its own members, of course, the logical corollary to this rule is that when a club license is applied for pursuant to the resort area exception "the pleasure, convenience, and general welfare of the club members is the norm rather than the convenience or necessity to the entire resort area." *Springdale,* 20 Pa. Commonwealth Ct. at 485, 342 A.2d at 806. This does not mean that clubs are absolved from the burden of establishing that they would serve the need created either directly or indirectly by the influx of a transient population, but instead means that the club must establish that it would serve a need among its members who are transients, or a need among its local members caused by the influx of transients. *See, e.g., Aqua Club* (Influx of transient club members who could not be adequately served by existing licensees.); *Willowbrook* (Influx of transient club members who could not be adequately served by existing licensees.). To conclude otherwise would mean that a club in an area where there was an influx of a transient population, even if it did not serve a need caused by the influx, could obtain a license merely by showing that it would be convenient or beneficial to club members to have one, whereas a similar club in an area with a stable population and a full quota could not obtain such a license regardless of its usefulness to club members. Such an absurd result could not have been intended by the General Assembly and would be contrary to the recognized policy of the Code to regulate and restrain the sale of liquor. *Penn State Faculty Club v. Pennsylvania Liquor Control Board,* 33 Pa. Commonwealth Ct. 320, 381 A.2d 1017 (1978).

Turning to the facts of this case, the record shows that while the Club failed to present a complete list of its membership, the uncontradicted testimony of the Club's head trustee was to the effect that only "ten or eleven" of the Club's 276 members lived outside of the Brownsville area, those members being former residents of the area who had moved to new locations. With respect to the flow of transients into the Brownsville area who were not members of the Club, the only specific testimony offered *pertaining to that area*[2] was that 25,000 to 30,000 people a year visited an attraction in Brownsville referred to as Bowman's Castle. It was not established how many of these visitors were local residents. In addition there was testimony offered indicating that other attractions in the Brownsville area included the "Iron Bridge" and the "Gothic Church," although no attendance figures were kept on these attractions, and a club member, who was also a Brownsville police officer, testified that he noticed an influx of tourists into the Brownsville area "from Memorial Day on through the Winter months. . . ."

No testimony was offered, however, indicating that as a result of this influx the current licensees in Brownsville were incapable of serving Club members. In this regard the record shows that Brownsville, a town covering less than nine square miles, and with an assigned quota of two retail liquor licenses, has seventeen such licenses in effect, ten of which are

---

[2] Although evidence was presented concerning tourist attractions in or around a three county area known as the Laurel Highlands, we have recently recognized that the mere fact that a municipality is located within this area is not conclusive as to the legal determination of whether that municipality is located within a "resort area" as that term is used in the Liquor Code. *Pennsylvania Liquor Control Board v. New Greensburg Aerie Fraternal Order of Eagles No. 3920, Inc.*, 82 Pa. Commonwealth Ct. 272, 478 A.2d 157 (1984).

counted against the quota. Testimony from Club witnesses was to the effect that two hotel liquor licenses were located within 1,000 feet of the Club, but that most Club members did not find these establishments to be attractive. The only other licensee mentioned was the Antique Grill, located thirteen or fourteen blocks from the Club, which was conceded to be a desirable establishment. No testimony was offered indicating that this or any other licensed facility within the area was overcrowded. In light of this complete lack of evidence indicating that the current licensees in Brownsville were incapable of serving Club members, we believe the common pleas court improperly reversed the Board's denial of the Club's request for a club liquor license. We shall accordingly reverse.

ORDER

Now, July 12, 1984, the order of the Court of Common Pleas of Fayette County, at No. 71 of 1982, dated November 24, 1982, is reversed.