Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant *v.* Spring Gulch, Appellee.

Argued October 16, 1984, before President Judge CRUMLISH, JR., and Judges ROGERS, WILLIAMS, JR., MACPHAIL, DOYLE, BARRY and COLINS.

*Eileen S. Manus,* with her, *Gary F. Di Vito,* Chief Counsel, for appellant.

*George C. Werner, Barley, Snyder, Cooper and Barber,* for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., February 6, 1985:

The Pennsylvania Liquor Control Board appeals a Lancaster County Common Pleas Court order reversing the Board's decision and granting Spring Gulch, Inc.'s application for a new liquor license. We affirm.

Spring Gulch, Inc., operates a restaurant, Spring Gulch Inn, on its campground in Salisbury Township. Salisbury Township has filled its quota of three licenses for the retail sale of alcoholic beverages[1] under Section 461(a) of the Liquor Code (Code).[2]

Spring Gulch, Inc., filed an application for a new restaurant liquor license, amusement permit and issuance of a provisional Sunday sales permit under the

---

[1] There are presently three restaurant liquor licenses in effect which are counted against the quota and one club liquor license which is not counted.

[2] Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §4-461(a), provides, in part, that only one license for each 2,000 inhabitants of a municipality may be granted by the Board.

"resort area" exception, Section 461(b) of the Code,[3] which provides that the "board shall have the power to increase the number of licenses in any such municipality which in the opinion of the board is located within a resort area."[4] The Board denied the application, finding that the restaurant was not located within a resort area and that the necessity for an additional restaurant liquor license had not been established.

The common pleas court conducted a hearing,[5] found that the Board had abused its discretion and directed the Board to grant the application.[6]

"Where, as here, the court below has taken additional evidence and made its own findings of fact, our scope of review is limited to determining whether or not there is substantial evidence in the record to support those findings and whether or not the trial court abused its discretion or committed an error of law." *Appeal of Daras*, 65 Pa. Commonwealth Ct. 456, 458-59, 442 A.2d 859, 861 (1982).

An applicant under Section 461(b) bears the burden of proving (1) that the premises sought to be licensed are located within a resort area and (2) that there is actual need for the additional license in the area. *Appeal of Brandywine Valley Inn, Inc.*, 53 Pa. Commonwealth Ct. 203, 417 A.2d 823 (1980).

With respect to the first prong of an applicant's burden of proof, this Court has held:

---

[3] 47 P.S. §4-461(b).

[4] The phrase "such municipality" refers to municipalities under Section 461(a).

[5] This was a de novo hearing pursuant to Section 454 of the Code, 47 P.S. §4-464.

[6] Although a trial court may not substitute its discretion for that of the Board, it may reverse if it finds that the Board has committed a clear abuse of discretion. *Pennsylvania Liquor Control Board v. Jimmy Paul's, Inc.*, 82 Pa. Commonwealth Ct. 280, 475 A. 2d 914 (1984).

In order to be classified as a resort area, the municipality and its immediate environs must have a *seasonal influx* of a large number of temporary inhabitants and *suitable accommodations* for this transient population. Penn State Faculty Club Liquor License Case, 33 Pa. Commonwealth Ct. 320, 381 A.2d 1017 (1978); Bierman Liquor License Case, 188 Pa. Superior Ct. 200, 145 A.2d 876 (1958). Moreover, there must be *specific evidence relating to* the number and size of the *recreational facilities* in and around the municipality, their proximity to the applicant's place of business, the seasons during which the facilities are used, and the number of people occupying them. Aiello Liquor License Case, 41 Pa. Commonwealth Ct. 345, 399 A.2d 154 (1979).

*Appeal of Birchwood Center, Inc.,* 43 Pa. Commonwealth Ct. 517, 519, 403 A.2d 155, 156 (1979) (emphasis added).

In order to determine whether the municipality experiences a large seasonal influx of transients, this Court has required a specific finding that there was a yearly increase of persons in the region at peak periods. *Aiello,* 41 Pa. Commonwealth Ct. at 349, 399 A. 2d at 155 (1979). A review of the record discloses tourist statistics which establish that Lancaster County, particularly the eastern region, experiences a large seasonal influx of tourists during the summer months. Spring Gulch, Inc.'s records reflect a parallel increase in the number of tourists occupying its campsites during those months.[7] We agree with the trial court's conclusion that this correlation between the county's

---

[7] An occupancy graph for either Lancaster County or Spring Gulch Resort Campground would resemble a bell-shaped curve with the peak in July and August, a slight decline in May, June, Septem-

tourist statistics and Spring Gulch, Inc.'s records, as well as Salisbury Township's location in the eastern region of the county, demonstrates that Salisbury Township itself experiences a seasonal influx of tourists at peak periods.

When attempting to demonstrate that its premises are located within a resort area, the applicant no longer has the burden of proving that there are adequate overnight accommodations in the area. *Application of East Course, Inc.,* 60 Pa. Commonwealth Ct. 83, 430 A.2d 1029 (1981).[8]

However, the applicant must, as it did here, present the required specific evidence relating to the recreational facilities in and around the municipality. A review of the record reveals that Spring Gulch Resort Campground is located approximately twelve miles from the area known as the "golden triangle" and only about eight miles from Intercourse, Pennsylvania, both major tourist attractions doing their greatest business during the summer months. This Court has held that recreational facilities within four to seven miles of an applicant's premises are close enough to be within the immediate as opposed to the general area of the premises. *Brandywine,* 53 Pa. Commonwealth Ct. at 208,

---

ber and October, and a sharp decline in the remaining months. On any day between Memorial Day and Labor Day, approximately 1,000 persons (primarily transients) are on the campground.

[8] Although the presence of overnight facilities is relevant in determining whether the existing recreational opportunities are used primarily by transients or by local residents, the lack of such facilities is not determinative where other evidence establishes that the resort attractions bring in people from other areas. *Daras,* 65 Pa. Commonwealth Ct. at 459, 442 A.2d at 861. Moreover, our Supreme Court has held that campsites and vacation home lots themselves may constitute "suitable accommodations." *Myers v. Pennsylvania Liquor Control Board,* 499 Pa. 76, 80, 451 A.2d 1000, 1001 (1982). A review of the record reveals that Salisbury Township provides well over 700 campsites to transients.

417 A.2d at 826. We hold that, in today's mobile society, recreational facilities within eight miles of an applicant's premises are not too remote to bear upon the resort nature of the area in which the premises are located.

A review of the record further discloses that Salisbury Township is an integral part of Lancaster County's appeal to tourists, providing the scenic countryside and Amish farmlands which attract many tourists to the area. Spring Gulch Resort Campground itself hosted approximately 22,970 persons, primarily transients, from April through October, 1981. The campground offers seasonal diversions such as swimming, fishing and camping. Although not conclusive, these attractions contribute to a finding that the municipality is within a resort area. *Aiello,* 41 Pa. Commonwealth Ct. at 348, 399 A.2d at 155.

Having considered these requirements, we hold that the trial court correctly concluded that Salisbury Township is located within a resort area.

With respect to the second prong of an applicant's burden of proof, this Court has held that the term "actual necessity" in determining the need for a liquor license will be given a broad construction so as to mean substantial need in relation to the pleasure, convenience and general welfare of the persons who would make use of the facility. *Pennsylvania Liquor Control Board v. Bridgeport Young Men's Club,* 84 Pa. Commonwealth Ct. 13, 478 A.2d 157 (1984). The factors of necessity to be considered are (1) the need of persons who will use the facility, (2) the number and types of establishments already present in the area, and (3) whether the clientele to be served is different from that served by the existing licensees. *Brandywine,* 53 Pa. Commonwealth Ct. at 208, 417 A. 2d at 826. "The real question is whether the Appli-

cant can add a service where and when the present licensee[s] cannot." *Id.* A review of the record discloses that Spring Gulch Inn offers a decor and atmosphere different from that provided by any of the three presently licensed establishments and a complete dinner menu, in contrast to the sandwich menu offered by two of the licensees. Although the third restaurant has a comparable menu, it prepares only pre-frozen food portions while Spring Gulch Inn serves fresh food. Finally, Spring Gulch Inn serves a different clientele than the present licensees.[9]

Having considered these factors, we hold that the trial court correctly concluded that there is an actual need for an additional liquor license in Salisbury Township, because the evidence demonstrates that Spring Gulch Inn offers a service not provided by any of the existing license holders.

We hold that there is substantial evidence in the record to support the trial court's findings and that it committed no abuse of discretion or error of law by concluding that the Board abused its discretion by denying the application of Spring Gulch, Inc.

Affirmed.

ORDER

The order of the Court of Common Pleas of Lancaster County, Criminal Division, at Liquor License Docket No. 1, page 145, dated March 14, 1983, is affirmed, and it is ordered that the Pennsylvania Liquor Control Board shall approve the application of Spring Gulch, Inc.

---

[9] Spring Gulch Inn serves tourists seeking a traditional Amish atmosphere, unlike the existing establishments (two taprooms and a diner which caters to truckers).

---

DISSENTING OPINION BY JUDGE MACPHAIL:

I respectfully dissent.

Our Supreme Court recently said in *Application of El Rancho Grande, Inc.,* 496 Pa. 496, 437 A.2d 1150 (1981):

> The purpose of regulatory legislation in this area [the granting of liquor licenses] has always been to restrain the sale of liquor, not to promote it.
>
> . . . .
>
> Construing the relevant legislative history, our courts have determined that the "resort area" exception was intended "to render an equitable distribution of such licenses in areas where, during certain seasons, the population is increased to such an extent that the usual number of licenses *is not adequate to serve the needs of the people.*" (Citations omitted.) Thus it is clear that the Legislature did not intend the Board to have unlimited discretion in awarding licenses in excess of the prescribed quota; rather, in keeping with its purpose to restrain the sale of liquor, the Legislature intended that the Board award an additional license only in an area which undergoes a seasonal increase in population and only when the applicant has demonstrated that the area has an "actual need" for an additional license. (Citation omitted.) (Emphasis in original.)

496 Pa. at 506-507, 437 A.2d at 1155.

Regarding "resort area" definitions, it appears that we are now on the verge of declaring the entire state of Pennsylvania as a "resort area." Our license plates advertise, "You've got [sic] a friend in Pennsylvania" to attract those outside our great Commonwealth to visit us. Virtually every county in the state has a tourist bureau to advocate the "resorts" within their individual boundaries. In liquor license applications under Section 461 of the Code, 47 P.S.

§4-461, much of the evidence is provided by local Chambers of Commerce and local Travel Bureaus. Perhaps the entire State of Pennsylvania *is* in fact a resort area. If it is, then we need not spend valuable judicial time in determining whether a 3, 4, 7, 8 or 12 mile distance between the premises sought to be licensed and "nearby" tourist attractions, falls within a "resort area." That determination, however, I submit should be legislative not judicial. Until we have a legislative expansion or elimination of the term "resort area," I am personally inclined to accept the discretion of the Pennsylvania Liquor Control Board in such matters.

Even more to the point of how we have judicially stretched the rubber band in this area of the law, is our interpretation of "necessity." In the case now before us, the majority notes that the applicant's premises will provide a "decor and atmosphere" different from any of the three licensed premises already in this area; it will serve a complete dinner menu of "fresh foods" as opposed to sandwich menus or "pre-frozen" foods served in the other establishments; and it will cater to tourists seeking an Amish atmosphere rather than catering to truckers. The majority is not to be faulted for failure to follow existing case law. Indeed, Judge, now President Judge CRUMLISH, JR., first articulated for this Court the criteria for "necessity" in *Petition of Springdale District Sportsmen's Association*, 20 Pa. Commonwealth Ct. 479, 342 A.2d 802 (1975) and there stated that inquiries should be directed to (1) the number and types of establishments already operating in the area; (2) the clientele served by the existing licensees; and (3) the clientele intended to be served by the applicant. The majority also notes that we have said that actual necessity is to be given a broad construction so as to mean *substantial* need in relation to the pleasure, convenience and gen-

eral welfare of the persons who would make use of the facility. *Pennsylvania Liquor Control Board v. Bridgeport Young Men's Club,* 84 Pa. Commonwealth Ct. 13, 478 A.2d 157 (1984).

Apart from the obvious question of whether alcoholic beverages are really appropriate in an Amish atmosphere, I raise the general question of whether any of the circumstances mentioned in the majority opinion demonstrate *substantial* need for an additional licensed premises in Salisbury Township. One of the virtues of American jurisprudence is its flexibility; that is, the judicial willingness to revise and modify case law to meet current conditions. In these days when there is a nationwide campaign to stamp out drunken driving and when the legislature of Pennsylvania is currently conducting hearings to determine whether "happy hours" should be continued, I seriously question whether our previous decisions defining "resort area" any longer are viable. It seems to me that the real "necessity" is for this Court to now reevaluate and specifically delineate what we will consider to be a resort area in light of current conditions and in light of the purpose of liquor licensing legislation as articulated by our Supreme Court in *El Rancho Grande.*

I would reverse the order of the court of common pleas and reinstate the order of the Pennsylvania Liquor Control Board.

Judge DOYLE joins in this dissent.