**Wing Pointe Corporation v. Pennsylvania Liquor Control Board**

530

C.P. of Berks County, no. 59-MD-01.

*John A. DiGiamberardino,* for appellant.
*Michael P. Bigley,* for appellee.

SCHMEHL, *J.,* February 26, 2002—On July 10, 2000, appellant, Wing Pointe Corp., filed an application with

the Pennsylvania Liquor Control Board for a new restaurant liquor license for an existing restaurant located in Perry Township, Berks County, Pennsylvania. Appellant filed their application for the restaurant liquor license under the then-resort area exception to the then-quota requirements of the Pennsylvania Liquor Code (or Licensing Act), 47 P.S. §4-461(b). The Bureau of Licensing of the board, pursuant to authority granted by the Liquor Code (47 P.S. §4-464), timely advised the appellant that a hearing would be held on the appellant's application. On October 10, 2000, a hearing on the application was held before a board hearing examiner in Allentown, Pennsylvania. By order dated January 10, 2001, the board refused appellant's application for a liquor license. In its opinion dated March 16, 2001, the board concluded that the quota for retail licenses in Perry Township had been filled and that no liquor license could be granted under the resort area exception because Perry Township is not a resort area and even if it were, the appellant failed to demonstrate actual need for an additional retail license. The board based its decision in part on the alleged failure of the appellant to show that Perry Township has a seasonal influx of a large number of transient visitors.

On December 20, 2000, Act 141 of 2000 was signed into law by Governor Tom Ridge. This new law amended sections 461 and 468 of the Liquor Code by eliminating the quota system (and the resort area exception) as it was formerly applied on a municipality basis and substituted, instead, a countywide quota, including countywide transfer of retail licenses. This law took effect on February 18, 2001.

On January 23, 2001, appellant appealed the board's decision to the Court of Common Pleas, Berks County, Pennsylvania. A hearing de novo was held before this court on April 16, 2001. At said hearing, appellant provided the court with testimony relating to the need for an additional liquor license in Perry Township. Instead of relying on the reasoning of the board, the appellee argued that the new law applied and that the application should be denied since appellant had not attempted to purchase a license from an existing holder outside of Perry Township and have it moved into the township with the permission of the board of supervisors.

On November 29, 2001, this court issued findings of fact and conclusions of law, overruling the decision of the Liquor Control Board and granting the appellant a new restaurant liquor license under the resort area exception to the Liquor Code.

This appeal followed. Pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, this court requested and received a concise statement of matters complained of on appeal. On December 12, 2001, the appellant filed this statement alleging that the court committed error by doing the following:

"(1) granting a resort license to a facility simply because it is in the environs of a resort area.

"(2) determining that Perry Township is a resort area within the meaning of the Pennsylvania Liquor Code.

"(3) determining that a need exists for an additional restaurant liquor license in Perry Township."

This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure and for

the following reasons we request that the instant appeal be denied:

### The Trial Court Did Not Err in Finding That Perry Township Is a Resort Area Because of Its Proximity To Richmond Township and Maxatawny Township

Although the liquor license quota for Perry Township is currently exceeded, the board has the authority to increase the number in any municipality which, in the opinion of the board, is located within a resort area. 47 P.S. §4-461(b); *Pennsylvania Liquor Control Board v. Spring Gulch,* 87 Pa. Commw. 395, 487 A.2d 472 (1985). The term "resort area" is not defined by the Liquor Code. Appellate courts, however, have held that a "resort area" is characterized by a population increase in the geographical area surrounding the premises during certain seasons such that the usual number of liquor licenses within the geographical area is not adequate to serve the needs of the people and that it must appear that the area's facilities are used primarily by temporary residents or tourists and not by area residents. *Pennsylvania Liquor Control Board v. Bankovich,* 94 Pa. Commw. 93, 502 A.2d 794 (1986).

In order to be granted a liquor license under the resort area exception, an applicant must prove that: (1) the proposed license premises are located within a resort area; and (2) a need exists for an additional license within that area. *In re Application of Asprey Inc.,* 693 A.2d 257 (Pa. Commw. 1997), *allocatur denied,* 549 Pa. 723, 702 A.2d 1061 (1997); *Pennsylvania Liquor Control Board v. Ripley,* 107 Pa. Commw. 425, 529 A.2d 39 (1987); *In re*

534

*Appeal of Brandywine Valley Inn Inc.,* 53 Pa. Commw. 203, 417 A.2d 823 (1980).

In order to be classified as a resort area the municipality and its immediate environs must have a seasonal influx of a large number of temporary inhabitants and suitable accommodations for the transient population. *Pennsylvania Liquor Control Board v. Spring Gulch,* 87 Pa. Commw. 395, 487 A.2d 472 (1985). Furthermore, there must be specific evidence which establishes the following: (1) the number and size of the recreational facilities in and around the municipality; (2) their proximity to the applicant's place of business; (3) the seasons during which the facilities are used; and (4) the actual number of non-residents occupying them. *In re Application of El Rancho Grande Inc.,* 78 Pa. Commw. 592, 467 A.2d 1381 (1983); *Appeal of Birchwood Center Inc.,* 43 Pa. Commw. 517, 403 A.2d 155 (1979).

In the case at bar the appellant has presented sufficient evidence that Perry Township is located within a resort area. The population of Perry Township in 1990 was 2,516 persons. The Berks County Heritage Center is located approximately eight miles away from the licensed premises. It contains an old cemetery, a wagon works factory, and a canal history center. In 1999, approximately 2,800 persons toured the Heritage Center. Regular visitors come from Berks County and surrounding counties, plus some visitors come from outside this area.

Blue Marsh Lake is located approximately 10 miles away from the proposed licensed premises. It is a park area with recreation facilities such as trails, hunting, wildlife viewing, picnicking, swimming, boating, fishing, and

winter activities. The website for Blue Marsh Lake reports over 1 million annual visitors.

Crystal Cave is located 3.5 miles away from the proposed licensed premises. Besides the cave itself, which is open for seasonal tours, it has a miniature golf course, gift shop, ice cream parlor, and theatre. Approximately 7,500 persons visited Crystal Cave from March until November in 1998.

Also about 3.5 miles from the proposed licensed premises is the Berkleigh Country Club, which is the site of the annual First Union Betsy King Classic LPGA Golf Tournament held each September for three to five days. Approximately 87,000 people attend that event. The appellant knows that some people who are members of the club come to stay at the lodge during the Betsy King Open.

Hawk Mountain Sanctuary is located approximately nine miles away from the premises and is a 2,400-acre park and bird sanctuary. It offers a hiking trail, visitor's center, bookstore, and theatre. It is open year round, but most of its visitors (approximately 70,000) come in the summer and fall.

The Kutztown Pennsylvania German Festival is an annual event held for one week each summer in Kutztown, approximately seven miles away. It is a folk festival including antiques and collectibles, food, live entertainment, workshops, seminars, and quilt/craft auctions. Annual attendance estimates range between 47,000 and 69,000 people.

The Mid-Atlantic Air Museum is located approximately nine miles away. It is an aviation history and air-

craft museum, attracting about 21,000 people annually. In the summer, airplane rides are available and there is a World War II Commemorative Weekend held each year.

Reninger's Antiques and Farmer's Market is located approximately seven miles away in Kutztown. It features a Saturday flea market and an antique and collectible market, a Friday and Saturday farmer's market, and a large antique extravaganza three times a year.

The Rodale Institute is located nine miles away in Kutztown. It is a 333-acre organic farm which holds tours from May through October. It attracts about 25,000 annual visitors. Clover Hill Vineyards and Winery in Breinigsville is approximately nine miles away. It holds winery tours in the summer and has a gift shop.

The Cut and Thrust Museum is located approximately seven miles away in Kutztown. It is a museum and sales gallery exhibiting edged weapons and other military items. It is open four days a week during the summer. East Penn Rail Excursions is also located in Kutztown about seven miles away and offers one-hour scenic train rides.

Kutztown University of Pennsylvania is located approximately seven miles away and has cultural and sporting events held weekly throughout the academic year that are open to the public and families of the 8,200 students.

Leesport Farmer's Market is located about five miles away in Leesport. It has a farmer's market, a flea market, and a livestock auction occurring only on Wednesdays. In addition, a one-day craft show is held five times a year.

The Pennsylvania Dutch Folk Culture Center is located nine miles away in Lenhartsville. It is a seasonal tourist center containing a one-room schoolhouse, a log cabin, a folk museum, and a library.

WK&S Railroad is located about nine miles away in Kempton. Tours of the steam tourist short-line railroad are held from May to October.

Based upon the seasonal influx of transient visitors for the numerous local attractions in the area, it appears that there is specific evidence that qualifies Perry Township as a resort area within the meaning of the Liquor Code. Therefore, this court did not find that Perry Township was a resort area merely because it is adjacent to both Maxatawny Township and Richmond Township which already qualify as resort areas in the eyes of the PLCB and the courts. Rather, this court based its decision on the evidence appellant presented which consisted of the number and size of the attractions in the area, the proximity of the attractions to the appellant's premises, the seasons during which the attractions are used, and the specific numbers of non-residents who utilize these attractions. Some of these attractions are the same as those used by the PLCB and the courts in reaching the decisions that Maxatawny Township and Richmond Township are resort areas.

*The Trial Court Did Not Err in Finding There Is a Need for an Additional License in Perry Township*

In establishing the necessity for the grant of an additional license, the licensee applicant must show a "substantial need in relation to the pleasure, convenience and

general welfare of the persons who would make use of the facility." *In re Application of Asprey Inc.,* 693 A.2d 257, 260 (Pa. Commw. 1997), *allocatur denied,* 549 Pa. 723, 702 A.2d 1061 (1997), quoting *Janes v. Liquor Control Board,* 43 Pa. Commw. 165, 168, 402 A.2d 1093, 1095 (1979). In assessing necessity, courts consider: "(1) the needs of the persons who will use the facility; (2) the number and types of existing establishments in the area; and (3) whether the persons to be served differ from those served by existing licensees." *In re Application of Asprey Inc.,* 693 A.2d 257, 260 (Pa. Commw. 1997), *allocatur denied,* 549 Pa. 723, 702 A.2d 1061 (1997); *Pennsylvania Liquor Control Board v. Spring Gulch Inc.,* 87 Pa. Commw. 395, 487 A.2d 472 (1985).

In short, the question is "whether an applicant will provide a needed service which existing licensees cannot." *In re Application of Asprey Inc.,* 693 A.2d 257, 260 (Pa. Commw. 1997), *allocatur denied,* 549 Pa. 723, 702 A.2d 1061 (1997); *In re Appeal of Brandywine Valley Inn Inc.,* 53 Pa. Commw. 203, 417 A.2d 823 (1980). Additionally, "an applicant must show that the current licensees cannot meet the need caused by the influx of transients in such resort areas." *In re Application of Asprey Inc.,* 693 A.2d 257, 260 (Pa. Commw. 1997), *allocatur denied,* 549 Pa. 723, 702 A.2d 1061 (1997); *Pennsylvania Liquor Control Board Appeal,* 82 Pa. Commw. 142, 474 A.2d 738 (1984).

The appellant has presented sufficient evidence that there is a need for a restaurant which can serve alcoholic beverages with meals in Perry Township, Berks County, Pennsylvania. Throughout the municipality, Cousin's Pub is the only other licensed establishment. Cousin's Pub is

a sports bar located approximately six miles north of the proposed licensed premises. Cousin's Pub is primarily a sports bar/take out style restaurant that serves mostly pizza, subs, sandwiches, wings, hamburgers, fried foods, and pasta. At peak times, patrons must wait to be seated at this restaurant. The appellant made a good faith attempt to purchase the Cousin's Pub's liquor license but was informed that this license was not available for sale.

Appellant's restaurant menu includes a variety of moderately and reasonably priced meals including steaks, fish, chickens, quail, and pasta. The restaurant is open and in operation year-round serving breakfast and lunch Tuesday through Sunday, and dinner on Friday and Saturday evenings. Furthermore, the restaurant is located near the appellant's 180-acre plot of ground which is used primarily as a hunting preserve on a reservations basis only. Various hunting activities include hunts for small game, clay pigeon shoots, and trap shoots. Reservation and fees for the hunting sessions and shoots are made in a different building located 0.25 miles away from the proposed licensed premises. Most people who come to the preserve are in the 50-year-old range, and some bring their children and spouses. Clearly, Cousin's Pub and the other establishments in the surrounding area cannot provide the same level of services, the same type of menu, and the unique atmosphere along with the large seating capacity of the Quail's Nest Restaurant. The appellant has demonstrated that there is a necessity to the area since it proposes to be open on a year-round basis and is conveniently located for all visitors and vacationers to the area.

Furthermore, the intent of the resort area exception is to regulate and restrain the sale of liquor, not to promote it. *In re Appeal of Penn State Faculty Club,* 33 Pa. Commw. 320, 381 A.2d 1017 (1978). The legislature sought to provide more licenses in an area that would have a seasonal increase in population so that the usual number of licenses would not be inadequate. Appellant in this case is not looking to promote the sale of liquor as much as providing his hunting patrons and other tourists with a glass of wine or other alcoholic beverages with their dinner. In conclusion, the court's decision should be affirmed as appellant has clearly demonstrated a need for this type of restaurant.